**Martha M. BURNETT, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 80–3026.**

United States District Court,
W.D. Arkansas,
Harrison Division.

May 25, 1983.

Anthony W. Bartels, Jonesboro, Ark., for plaintiff.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM AND ORDER

ARNOLD, Circuit Judge, Sitting by Designation.

■ Before the Court is a motion by plaintiff's counsel for an award of attorney's fees in this social security disability case. The motion alleges that the total accrued benefits finally awarded to the plaintiff, after two remands by this Court, amounted to $8,079.10. Counsel prays for an award of twenty-five per cent. of this sum, or $2,019.75, as his statutory fee for services rendered in this Court. The Court has power to award fees for services performed before the Court, even though Section 206(a) of the Social Security Act, 42 U.S.C. § 406(a), provides for an administrative award of fees where, as here, the deter-

mination favorable to the plaintiff was ultimately made by the agency.ᐧ See *Fenix v. Finch,* 436 F.2d 831 (8th Cir.1971). The problem with the motion, which ordinarily would be a matter of little legal moment, is a lack of agreement between the parties as to the amount of past-due benefits actually awarded to the plaintiff.

■ The defendant submits that the amount of accrued benefits awarded to the plaintiff was actually $5,652.81, and that the plaintiff's attorney is therefore entitled to $1,413.20, or one-fourth of that sum. She says that the Social Security Administration is withholding this amount for payment of the attorney's fee. The difference in amounts, she says, is due to the fact that the plaintiff's past-due benefits were reduced because plaintiff received Supplemental Security Income (SSI) payments for December, 1980, through March, 1982. Had plaintiff been receiving her disability insurance check during this period, as she was entitled, her SSI payments would have been $2,426.29 less than were actually paid. The agency is, therefore, entitled to an offset of this amount in computing her past-due benefits, or at least so the Secretary argues. This computation is based on Section 1127 of the Social Security Act, which was added by the Social Security Disability Amendments of 1980, 42 U.S.C. § 1320a–6.

The problem with the Secretary's computation of past-due benefits is that her procedures unfairly reduce the amount of the claimant's attorney's fee, which would, at least in cases where the Court awards benefits, ordinarily be twenty-five per cent. of all past-due benefits payable under Title II. That the Secretary is entitled to recover overpayments in SSI benefits by reducing presently payable disability benefits is not at issue. The problem rather is in using the overpaid SSI benefits as an offset against the figure used to determine fees payable to claimant's attorney. It should be noted that the overpayments in this case were not overpayments of Title II disability insurance benefits, but rather of Title XVI SSI benefits. Computation of the offset does not alter the amount of Title II benefits

which were due and owing to the claimant all along. And it is on these benefits that claimant's attorney seeks to base his fee under 42 U.S.C. § 406(b).

The Secretary, it would seem, could just as easily recoup the overpayment in SSI benefits by alternative means which would not affect the claimant's attorney's fee. At least one ALJ has held that the Administration is obligated to do so. The issue in that case was "whether the Social Security Administration has properly implemented Section 1127 of the Social Security Act, as amended, and new Regulation 20 C.F.R. 404.408(b), by first determining and paying Title XVI (SSI) benefits to a claimant who has been the subject to a concurrent finding of disability as to both Titles II and XVI benefits[,] and then offsetting the SSI benefit against the retroactive Title II payments, thereby effectively reducing the amount of Title II benefits available for attorney fees." Appendix 2 to Letter from Plaintiff's Counsel dated May 9, 1983, at 1.[1]

Although it was not apparent to the Court at first blush, after some study it has become clear that this case is procedurally identical to the New York case described by the ALJ's opinion. A brief review of the procedural history of this claim may be helpful:

January 18, 1979  Claimant files application for Disability Insurance Benefits under Title II.

September 14, 1979  Hearing held before ALJ Dane in Batesville.

April 18, 1980  Decision by ALJ Dane finding no disability.

June 9, 1980  Appeals Council denies review of AlJ's decision.

June 24, 1980  Complaint filed in this Court seeking review of final decision by Secretary.

December 12, 1980  Order by this Court remanding claim to Secretary with instructions for ALJ to call vocational expert witness.

December 17, 1980  Claimant files application for Supplemental Security Income (SSI) Benefits under Title XVI.

February 13, 1981  Appeals Council remands claim to ALJ pursuant to this Court's remand.

April 1, 1981  Hearing before ALJ Blair at Batesville on both Title II and Title XVI disability claims.

June 17, 1981  Decision by ALJ Blair finding no disability and denying benefits for both disability insurance and SSI.

September 4, 1981  Appeals Council affirms ALJ's finding of no disability.

October 14, 1981  Supplemental transcript of proceedings before the Administration filed for review in this Court.

February 2, 1982  Order by this Court remanding claim to Secretary so that ALJ may frame proper hypothetical question for vocational expert.

On August 9, 1982, the Appeals Council made a determination that Ms. Burnett was disabled and thereby entitled to both Title II benefits and SSI benefits. Apparently this decision was made without a further hearing before an ALJ.[2] Ms. Burnett was found to be disabled from March 24, 1978 and eligible for Title II disability insurance benefits from September, 1978. This finding of disability also meant that Ms. Burnett was eligible for SSI benefits based on her December 17, 1980 application for SSI.

---

1. Neither the ALJ nor the style of the case is identified in this appendix. The opinion is of course not controlling authority, but it is persuasive, because it is a reasonable analysis and application of the law.

2. This inference is based on an attachment to the government's letter to the Court dated April 29, 1983. The document is entitled "Attorney Fee Case-Past Due Benefit Summary." The document is extremely difficult to decipher as it is partially handwritten and largely in a shorthand code used by the Administration. After some study the Court concludes that certain abbreviations are used with the following meanings: "AC" means Appeals Council. "MOE" means month of eligibility. "W/C O/S" means workers' compensation offset. "COL INC" means cost of living increase. Upon translation, this document contains a wealth of information helpful to the Court's understanding of exactly what the Administration has done in this case.

On February 28, 1983, the Administration computed the claimant's past-due benefits under Title II. These computations, see n. 2, *ante,* included certain offsets for workers compensation benefits received and overpayments of SSI benefits and resulted in an amount to be withheld to cover her attorney's fees. The Administration sought to explain all of this in a letter to the claimant dated April 3, 1983. The letter is, unfortunately, somewhat ambiguous in its statement that "We reduced your Social Security benefits because you received Supplemental Security Income payments for December 1980 through March 1982." While Ms. Burnett may have received these payments at the time of this letter, she did not receive them on a monthly basis from December, 1980 through March, 1982.[3] This much is clear from the fact that the claimant was not found disabled, a prerequisite for SSI benefits, until August 9, 1982.

This brings us to the Administration's computation of past-due benefits in this case, a computation which was made in an effort to implement Section 1127 of the Social Security Act. That law requires the Administration to reduce an individual's retroactive monthly Social Security benefits if the individual received SSI payments for the same period. The amount of the reduction, referred to as the SSI offset, is the amount of the SSI payment that would not have been paid if the individual had received the monthly Social Security benefits when they were due instead of retroactively. This statute is the basis for implementing regulations by the Secretary which appear at 20 C.F.R. §§ 404.408(b), 404.501, 404.902 and 416.1123. See 47 Fed.Reg. 4985, 4988 (1982).

This Court agrees with the opinion of the ALJ, referred to above, "that section 1127 was intended to apply only when those supplemental security income payments were actually paid during the retroactive period and as the result of an earlier adjudication, and not when, in a concurrent case, [SSI

benefits are] paid retroactively prior to Title II benefits simply because computed first." Appendix 2, *supra,* at 8. The language of the statute itself indicates such an intent. "Section 1127 speaks of cases in which a claimant for Title II benefits is *subsequently* determined to be entitled to those benefits and *'was'* an individual to whom supplemental security income benefits 'were paid' for one or more months 'during' the retroactive period." *Id.* at 9 (emphasis in original).

Moreover, the more logical policy "would be to compute and pay disability *insurance* benefits under Title II before paying public funds from the supplemental security income program . . . ." *Id.*

The effect of the Administration's computation and payment procedure in the present case is "creating the impression of a potential 'windfall,' simply by computing and paying [SSI] benefits first in a lump sum at the end of the retroactive period in the cases of individuals with concurrently adjudicated claims" for SSI and Title II disability benefits. *Id.*

This Court further agrees with the ALJ that the primary result of the Secretary's procedure in this case is to reduce the amount of withheld Title II benefits available for the payment of attorney's fees, with no apparent public benefit from the offset procedure in cases of concurrent application. This issue, and the disincentive which it produces to represent SSA applicants, was raised before the Secretary in the notice-and-comment procedure before the adoption of 20 C.F.R. § 408(b). See 47 Fed. Reg. at 4987. The Secretary responded that the 25%-of-past-due-benefits figure has nothing to do with the fee actually authorized by the Secretary in cases of an administrative award of benefits. That is to say, the Secretary could authorize the attorney to collect a fee less than, equal to, or greater than 25% of past-due benefits. In the

---

**3.** This is contrary to the understanding of the Assistant United States Attorney expressed in his letter to the Court dated April 29, 1983. This representation by the Administration, though certainly unintentional, has caused some confusion which has delayed the Court's resolution of this issue.

latter case, the attorney would simply have to collect the remainder of his fee from his client. The Court assumes without deciding that the Secretary's interpretation of 42 U.S.C. § 406(a) in the Federal Register is a correct one for administrative cases. Her conclusion was that the procedure had no effect on fees actually awarded and was therefore not a disincentive for attorneys to represent Social Security claimants. But whatever may be said of § 406(a), § 406(b) is another matter. That section provides that in cases where a court renders a judgment favorable to a claimant, the court shall award a reasonable attorney's fee "not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment .... "[4]

Thus, in cases where the Court eventually awards a fee to claimant's counsel, a procedure which artificially reduces the amount of benefits available from which to make such an award represents a strong disincentive for lawyers to represent Social Security claimants. This cannot have been Congress's intent in enacting Section 1127. That section was intended to recover windfalls from those who had overcollected benefits under Title XVI, not to penalize attorneys. This Court therefore holds that in cases where Title II and Title XVI benefits are concurrently adjudicated and computed for retroactive periods, the Administration is obligated to compute and pay Title II disability insurance benefits before computation and payment of Title XVI SSI benefits. The Court further holds that, for purposes of computing the plaintiff's attorney's fee only, the Administration has improperly deducted $2,426.29 from past-due benefits as an SSI offset. The total past-due benefits on which an attorney's fee award should be based is $8,079.10. The Court finds that the claimant's attorney is entitled to a reasonable attorney's fee in the amount of 25 per cent. of these past-due benefits, or $2,019.75.

It is, therefore, ordered that the Secretary pay over to the plaintiff's attorney, Anthony W. Bartels, a reasonable attorney's fee in the amount of $2,019.75, and judgment will be entered accordingly.

---

**4.** In a telephone conference call which the Court conducted with counsel for both sides on April 22, 1983, the Administration agreed with the Court's interpretation of its power to make a fee award in this case under *Fenix v. Finch, supra.*