**Florence LINDSAY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant.**

**Civ. A. No. 78–2887 (JFG).**

United States District Court, D. New Jersey.

July 3, 1985.

Kirk B. Roose, Elyria, Ohio, pro hac vice, Howard N. Sobel, Cherry Hill, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Laurie J. Gentile, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

OPINION

GERRY, District Judge.

This motion presents an interesting question of statutory construction involving the Social Security Act.

Following several years of administrative hearings, appeals to this court, remands, and renewed appeals, the plaintiff was finally awarded disability insurance and SSI benefits by this court (by Order dated March 19, 1984). During the period that plaintiff was languishing without these benefits she received welfare payments from the State of New Jersey in the amount of approximately $14,000.

Ordinarily, an individual who believes she is disabled applies for both Disability Insurance Benefits (Title II) and Supplemental Security Income (Title XVI). The disability standards are identical under

these two subchapters. However, there are differences in the two programs. Title II benefits are based on contributions the claimant has made into a Social Security trust fund (via a withholding tax), and these benefits are not based on financial need. Title XVI benefits are *needs* based, and are not dependent on one's having ever worked. The larger one's Title II benefits, the smaller will be one's Title XVI benefit, as Title II benefits are figured into the Title XVI "needs" equation. *Eligibility* for Title II and Title XVI benefits is ordinarily determined concurrently, as it was here.

Under 42 U.S.C. § 407, Title II benefits *cannot* be assigned to creditors, such as state welfare agencies that provide interim benefits to a claimant. However, under 42 U.S.C. § 1383(g)(1), Health and Human Services may withhold past-due Title XVI benefits from a claimant, and pay them to a state in reimbursement of the state's interim outlay of welfare benefits.

Under another provision, 42 U.S.C. § 1320a–6, where an individual has been paid benefits under Title XVI, and then is deemed eligible for Title II benefits, the amount payable to the claimant under Title II is reduced by the amount of Title XVI benefits that the claimant would not have received had Title II benefits been paid in the first place. But even before the claimant gets anything from Title II, the state is reimbursed for its interim welfare payments. Section 1320a–6 is an antiwindfall provision, designed to ensure that a claimant is not paid twice.

The problem is this:

Section 1320a–6, by its language, seems to contemplate that the above-described offset scheme only applies where payment of Title XVI benefits has preceded the payment of Title II benefits. So what happens if eligibility for Title II and Title XVI is determined concurrently (i.e. with a single decision that an individual is disabled)?

Suppose the Title II benefits are computed first. Let's say the past-due amount under Title II is $30,000. The claimant gets all of this, since under § 407, these benefits are nonassignable. Then, the Title XVI benefits are calculated, and are found to total $5,000. In the meantime, state welfare has paid out $15,000. The entire $5,000 is paid to the welfare department. But if Title II benefits are paid first, as in this hypothetical, the welfare department is out of pocket $10,000, and the claimant, who was only entitled to $35,000, is "in pocket" $45,000 (15 + 30).

Now let's suppose the Title XVI benefits are computed first. Now, because Title II "income" is not figured into the needs equation, Title XVI benefits will be much higher—let's say $25,000. The Social Security Administration will pay the welfare department $15,000, pursuant to § 1383(g), and remit the rest to the claimant: $10,000. Now, in calculating Title II benefits, the Social Security Administration will offset the amounts paid under Title XVI that would not have been paid had Title II been computed first. So, having already received $25,000 in payments (15 + 10), and being entitled to $35,000, the Social Security Administration will only remit to the claimant an additional $10,000. In this example, then, the Social Security Administration pays out the same $35,000. But the welfare department is totally reimbursed for an amount it would not have had to pay had claimant originally been deemed disabled, and the claimant gets $10,000 less.

The question presented by this motion is which method of computation the Social Security Administration should use when eligibility for both types of benefits is determined concurrently. Predictably, the claimant says that Title II benefits should be computed first. The Social Security Administration takes the contrary position.

In fact, the Social Security Administration did compute Title XVI benefits first, with the resulting loss to the claimant (of some $14,000) and the making whole of the welfare department. The purpose of the "motion to enforce" is to make the Social Security Administration reverse the order of computations and thereby remit to claimant the additional $14,000.

There are cases which go both ways on this problem. *Burnett v. Heckler,* 563 F.Supp. 789 (W.D.Ark.1983), *reversed on other grounds,* 756 F.2d 621 (8th Cir.1985); and *Carlisi v. Heckler,* 583 F.Supp. 135 (E.D.Mich.1984), both hold that Title II benefits should be computed first, with the consequent windfall to the claimant. But neither of these cases really squarely address the issue. Both are concerned with attorneys fees payable under the Act. Under § 406, attorneys fees may only be withheld from *Title II* past due benefits, *see* 20 C.F.R. § 404.1703, so that if these are computed second, and are therefore in a reduced amount, the attorneys fees will also be in a reduced amount. An unreported case from Minnesota, *McKenzie v. Heckler,* addresses the issue more squarely and reaches the same result. In that decision, the court concluded that to permit Title XVI to be computed first involved an end-run around § 407, which protects Title II benefits from creditor's such as the state.

This argument is not thoroughly persuasive. Section 407 does not set an order for the computation of benefits; it merely provides that Title II benefits, *whenever computed,* may not be assigned.

A second argument involves the language of the windfall provision, § 1320a–6. The provision (since amended) governing this case reads in pertinent part:

> In any case where an individual—(1) makes application for [Title II] benefits ... and is subsequently determined to be entitled to those benefits, and (2) was an individual with respect to whom [Title XVI] benefits *were paid* ... [Title II benefits will be reduced].

The *McKenzie* court, relying on the "were paid" language, reasoned that the offset only applies where a determination of Title II *eligibility* comes *after* determination of Title XVI *eligibility,* not where there is a *concurrent* determination of eligibility.

Again, this argument is not thoroughly persuasive. Section 1320a–6, like § 407, is silent on the question of which of two benefits, for which eligibility has been determined simultaneously, should be computed first. If Title XVI benefits are computed and paid first, then these amounts quite literally "were paid" before the receipt of Title II benefits, and nothing in § 1320a–6 bars recoupment of the latter benefits.

I am more persuaded by the reasoning of *Gallo v. Heckler,* 600 F.Supp. 1513 (E.D.N. Y.1985), which endorses the Secretary's approach here. That case correctly, I believe, states that no statute provides clear guidance on which benefits are to be calculated first. *Gallo* does point out, however, that § 1320a–6 expresses a clear intent to avoid windfalls and insure that a claimant not receive a greater amount in past due benefits (including interim welfare payments) than she would have received had benefits been actually paid when due (i.e. had claimant been originally judged disabled by the Social Security Administration). *Gallo* further recognizes the unfairness to local welfare departments in being unable to recoup interim payments that would not have been made but for the original erroneous determinations of nondisability, and attaches greater importance to the § 1383(g) reimbursement scheme.

The Eighth Circuit, in reversing *Burnett, supra,* seems to endorse *Gallo,* although that endorsement is dicta, and in a footnote. No other appellate court seems to have reached the issue yet.

The motion to reopen will be granted, but the substantive motion will be denied. Defendant shall submit an order within five days.