### Creola WHEELER

v.

### Margaret HECKLER, Secretary of Health and Human Services.

### Appeal of Margaret M. HECKLER, Sec. of Health and Human Services.

### No. 85–5435.

United States Court of Appeals, Third Circuit.

Argued March 3, 1986.

Decided March 27, 1986.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., W. Hunt Dumont, U.S. Atty., Newark, N.J., Donald A. Gonya, Randolph W. Gaines, John B. Watson, Gwenda Jones Kelley (argued), Baltimore, Md., for defendant-appellant.

Jeffrey G. Paster, Sheryl Gandel Mazur, West Orange, N.J., (argued), for plaintiff-appellee.

Before ALDISERT, Chief Judge, and SEITZ and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case presents a labyrinthine question concerning the calculation of attorney fees for representation of a Social Security disability insurance claimant. The district court concluded that the method employed by the Social Security Administration (SSA) for determining the attorney fee in this proceeding was not consistent with the relevant statute, 42 U.S.C. § 406(b)(1) (1982), and ordered a different calculation. Because we believe that SSA's resolution of the problem is within its discretion, we will reverse the judgment of the district court.

### I.

A disabled American may qualify for either or both of two federal benefits programs as a result of his or her disability. Title II of the Social Security Act provides for disability insurance (SSDI), under a program funded by worker and employer contributions. The Supplemental Security Income (SSI) arrangement, Title XVI of the Act, does not depend on a claimant's insured status, but instead provides a minimum income for the aged, blind and disabled who meet its requirements.

Creola T. Wheeler, a New Jersey resident and the claimant in this case, applied for SSDI benefits in June 1982. In December of that year, she retained an attorney, Jeffrey G. Paster, Esquire, to assist her in demonstrating her eligibility, and agreed to pay him the greater of $100 per hour or 25% of retroactive benefits awarded, so long as benefits were obtained. The agency denied the requested benefits, and Wheeler and her attorney pursued an appeal in the district court. There they prevailed, and the district court ordered in January 1984 that benefits be awarded. The district court later issued an order concerning the attorney fee; it is only that

ruling which has been appealed by the Secretary of Health and Human Services.

While the SSDI application was pending, Wheeler's financial condition worsened, and she applied for an SSI stipend in addition to SSDI benefits. This second application was not at issue in the district court proceedings, but because the same disability standard governs both SSDI and SSI eligibility determinations the district court's decision that Wheeler was entitled to SSDI payments compelled the conclusion that she was also eligible for SSI. Accordingly, the Secretary soon approved a retroactive SSI award. This SSI determination had a significant impact on the attorney fee calculation.

The Secretary found that Wheeler was entitled to $5,207 in retroactive SSDI benefits, for the period from November 1982 through December 1983. Normally, Wheeler's attorney would be entitled to have withheld 25% of these past-due benefits as compensation for his representation in the district court. 42 U.S.C. § 406(b)(1) (1982). But another statute, 42 U.S.C. § 1320a–6 (1982), requires that when retroactive SSDI benefits are awarded the sum owed must be reduced by the amount of SSI benefits received for the same period that would not have been collected if the SSDI income had been timely received. SSA applied this offset provision here, calculating the retroactive SSI amount as $1,995.04, and thereby reducing the SSDI award from $5,207 to $3,211.96.

These computations apparently had no direct impact on Wheeler; she remained entitled to a total award of $5,207. But they did adversely affect attorney Paster. Because § 406(b)(1) permits a 25% retainer only on retroactive *SSDI* awards, the Secretary withheld as an attorney fee 25% of $3,211.96 ($802.99), rather than 25% of $5,207 ($1,301.75).

Paster filed a motion in the district court to compel calculation of the attorney fee based on the gross SSDI award before the SSI offset; he represented that his client had refused to honor the retainer agree-

ment.[1] The district court granted the motion and ordered SSA to pay a fee larger than the amount the agency had withheld. 607 F.Supp. 646 (D.N.J.1985).[2]

The present appeal requires that we review the propriety of the Secretary's practice of determining the SSDI-based attorney fee following the SSI offset. This question has divided the federal courts that have considered it. The only court of appeals to address the issue upheld the administrative procedure. *Burnett v. Heckler,* 756 F.2d 621 (8th Cir.1985). Several district courts, in contrast, have rejected the Secretary's interpretation. *See, e.g., Kovar v. Heckler,* 622 F.Supp. 967 (N.D. Ohio 1985); *Sepulveda v. Secretary of Department of Health and Human Services,* No. 83 Civ. 4382 (E.D.N.Y. Oct. 18, 1985); *Motley v. Heckler,* 605 F.Supp. 88 (W.D.Va. 1985); *Carlisi v. Secretary of Health and Human Services,* 583 F.Supp. 135 (E.D. Mich.1984); *Booe v. Heckler,* [1984 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 15,352 (S.D.Ind. Jan. 23, 1984).[3] As this is a case of statutory interpretation, the scope of our review of the district court's decision is plenary. *Chrysler Credit Corp. v. First National Bank and Trust Co.,* 746 F.2d 200, 202 (3d Cir.1984) (per curiam).

## II.

Our task of statutory construction begins with the attorney fee provision itself. Section 406(b)(1), applicable to SSDI applications, states:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

The Secretary's position is that the phrase, "the total of the past-due benefits," refers to the retroactive SSDI amount actually paid to the beneficiary, following offsets and other deductions applicable to the retroactive period. 47 Fed.Reg. 4985, 4986 (1982). Opponents, including attorney Paster here, insist that the total includes all benefits to which a claimant is entitled, even though, as a result of liens, offsets, and other deductions, he or she may not receive all monies. *See, e.g., Kovar,* 622 F.Supp. at 671.

▮ As the Supreme Court and this Court have emphasized frequently, our role is not to impose upon SSA our own interpretation of the Social Security legislation. Rather, because Congress has delegated to the Secretary the responsibility for administering the complex programs, we must defer to her construction, as long as it is reasonable and not arbitrary and capricious. *See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Lugo v. Schweiker,* 776 F.2d 1143, 1146–47 (3d Cir.1985).

---

**1.** Attorney Paster's position in filing this motion and on this appeal is potentially adverse to his client's interests. Such a conflict is always likely where a defendant pays both the plaintiff and the plaintiff's attorney out of a single, fixed fund. *Prandini v. National Tea Co.,* 557 F.2d 1015, 1021 (3d Cir.1977). Because this issue was not raised in the district court we will not address it, other than to note that in these situations attorneys should pay careful attention to ethical guidelines concerning third-party payment of attorney fees. *See* Model Rules of Professional Conduct, Rule 1.8(f); Model Code of Professional Responsibility DR 5–107(A)(1).

**2.** The district court considered the retroactive period as lasting through May 1984, leading to

an SSDI award of $7,184 and a fee of $1,796. However, agency regulations specify that the retroactive period extends only to the month preceding the month in which a judicial finding of disability is made. 20 C.F.R. § 404.1703 (1985). Here, the court issued its ruling in January 1984; consequently, the Secretary properly decided that the period ran through December 1983.

**3.** In *Reid v. Heckler,* 735 F.2d 757 (3d Cir.1984), this Court held that a district court has inherent power to order a 25% attorney fee withheld out of retroactive SSI as well as SSDI awards granted in proceedings before it. That decision does not benefit Paster, however, because Wheeler's SSI application was not before the district court.

In this case, we must first determine whether the Secretary acted permissibly in applying the SSI offset provision. If she did, it must then be decided whether the Secretary's position that the offset should affect the calculation of attorney fees under § 406(b)(1) is reasonable.

### III.

■ The offset provision states that where a person is found eligible for retroactive SSDI benefits, and SSI benefits "were paid ... for one or more months" during the retroactive period, the SSDI award is to be reduced by the amount of SSI monies disbursed. 42 U.S.C. § 1320a–6 (1982).[4] This procedure is designed to eliminate a potential windfall to the claimant, where a claimant receives SSI, for example, in 1985, and then in 1986 obtains a retroactive SSDI award for 1985. Had the beneficiary collected SSDI at the appropriate time in 1985 his or her entitlement to SSI, based on need, would have been reduced and possibly eliminated.

### A.

Attorney Paster's first contention is that Congress authorized the offset calculation

only where SSI benefits were actually paid during the period for which SSDI benefits are later paid retroactively, and not where both the SSDI and SSI awards are made concurrently and retroactively, as here. He emphasizes the statutory requirement that SSI benefits *"were paid"* for the earlier months, and maintains that this statutory language excludes the situation where the SSI grant, as well as the SSDI award, is retroactive. The Secretary, in contrast, stresses the reference to benefits paid *"for* one or more months," arguing that the SSI benefits need be applicable only to, and not actually paid in, the retroactive SSDI period.[5]

■ Under the interpretation urged by Paster, a claimant would receive a full SSI award and a full SSDI award for a period in which she was not entitled to all of both. It is unlikely that Congress intended such a result. Indeed, the Secretary's interpretation of § 1320a–6 promotes the Congressional purpose to avoid windfalls by applying the offset even to concurrent, retroactive awards. *See Cuthbert v. Secretary, Department of Health and Human Services,* 784 F.2d 1157 (4th Cir. Nov. 29, 1985)

4. Section 1320a–6 states, in relevant part:

Notwithstanding any other provision of this chapter, in any case where an individual—

(1) makes application for benefits under subchapter II [SSDI] of this chapter and is subsequently determined to be entitled to those benefits, and

(2) was an individual with respect to whom supplemental security income benefits were paid under subchapter XVI of this chapter (including State·supplementary payments which were made under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212 of Public Law 93–66) for one or more months during the period beginning with the first month for which a benefit described in paragraph (1) is payable and ending with the month before the first month in which such benefit is paid pursuant to the application referred to in paragraph (1).

the benefits (described in paragraph (1)) which are otherwise retroactively payable to such individual for months in the period described in paragraph (2) shall be reduced by an amount equal to so much of such supplemental security income benefits (including State supplementary payments) described in paragraph (2) for such month or months as would not have been paid

with respect to such individual or his eligible spouse if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due during such period rather than retroactively....

Section 1320a–6 was amended effective February 1, 1985. Deficit Reduction Act of 1984, Pub.L. No. 98–369, Title VI, § 2615(a), 98 Stat. 1132. This amendment, neither applicable nor relevant to this case, permits an offset in the converse situation when SSDI benefits are awarded first and an SSI award is later granted retroactively.

5. The Secretary's position has apparently evolved from a different stance taken earlier. *See* 47 Fed.Reg. 4985, 4986 (1982). But an administrative agency is entitled to change its interpretation of the statutory scheme it administers, and so long as it adequately explains its new position that view will be accorded deference. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Butler County Memorial Hospital v. Heckler,* 780 F.2d 352, 355 n. 1 (3d Cir.1985).

(construing analogous provision for attorney fees for representation before the agency). Inasmuch as the Secretary's interpretation as to the application of the offset provision to retroactive SSI awards is reasonable and not inconsistent with the Act, it must be upheld.

### B.

Paster's next argument, which was adopted by the district court, appears to have more force. Even assuming that it is appropriate to apply an offset in the present context, he states, it unfairly penalizes the attorney when the agency calculates the retroactive SSI award *before* calculating the SSDI amount. By doing so, SSA creates a situation in which there are SSI payments "for one or more months during the [SSDI] period," with the result that the retroactive SSDI benefits—and the attorney fee connected to them—are reduced. This would not happen if the SSDI award were calculated first. For example, Paster represents that during the retroactive period if Wheeler had received SSDI she would have had too many resources to receive any SSI payments.

In making this complicated argument Paster assumes that it makes no difference to SSA or the claimant whether the SSI or SSDI amount is calculated initially, since the same *total* award is made; only the attorney suffers, Paster insists, when SSI is determined first and the SSDI amount is reduced. If this assumption were true, it would create a persuasive argument for agreeing with the district court that the Secretary's practice has the sole effect of "artificially reducing" the attorney fee for only capricious purposes. 607 F.Supp. at 649.

However, SSA has a valid reason to make the SSI calculation first. One party that stands to gain when this happens, and an SSI award is therefore announced, is the welfare agency of the state where the applicant resides. When a claimant first applies for SSI there is a delay before eligibility is determined, and during that time an indigent person is likely to seek welfare assistance from the state. To encourage states to provide such assistance, Congress provides that the claimant may authorize the Social Security Administration to withhold SSI benefits and pay them to the state as reimbursement for interim welfare assistance paid to the applicant. 42 U.S.C. § 1383(g)(1) (1982).

■ If SSI is *not* calculated first when concurrent, retroactive awards of SSI and SSDI benefits are made, the state may never be reimbursed. This not only would contravene the Congressional intent to encourage state assistance during the interim period, but also would mean that the claimant receives a windfall: the full SSDI amount plus welfare benefits that would never have been paid had the SSDI monies been disbursed at the appropriate time. The Secretary's practice of determining SSI initially and assuring that there is SSI money available for reimbursement is therefore not capricious, but rather consistent with Congress' goals. *Gallo v. Heckler*, 600 F.Supp. 1513 (E.D.N.Y.1985); *Lindsay v. Secretary of Health and Human Services*, 612 F.Supp. 366 (D.N.J.1985); *contra McKenzie by Gallant v. Heckler*, 605 F.Supp. 1217 (D.Minn.1985).[6]

Some courts have argued that the SSI offset is not necessary to assure reimbursement to the states since SSA may reimburse a state by withholding funds from later monthly SSI benefits. *Kovar*, 622 F.Supp. at 972; *Carlisi*, 583 F.Supp. at 138 n. 6. Thus, these courts assert, the beneficiary does ultimately repay the state and there is no windfall to him or her by not applying an SSI offset to the SSDI retroactive award.

---

**6.** *McKenzie* argues that the Secretary's practice is a wrongful assignment of SSDI funds for the purpose of reimbursing state agencies, in violation of 42 U.S.C. § 407 (1982). 605 F.Supp. at 1219. There may be some tension between § 407 and the SSI reimbursement statute, § 1383(g)(1), but it is the Secretary's role to implement all provisions. For the reasons stated above, we cannot say that the accommodation she designed is impermissible.

This assertion ignores a basic facet of the Social Security scheme: One who is disabled receives SSI only if he or she is not adequately insured under the SSDI program, and indeed many SSDI recipients are sufficiently insured so that their monthly benefits exceed the maximum allowable income for SSI purposes. Wheeler's case provides an example. While awaiting a determination of her SSDI application, the only reason she applied for SSI was that she was receiving no benefits of any kind at the time. Now that she will be receiving monthly SSDI payments, her insured status is such that she is probably ineligible for SSI. Since a state may be repaid for welfare assistance only from SSI funds, its sole opportunity for repayment by such a claimant arises when the retroactive award is made.

■ Arguably, the fairest system would be for the Secretary to determine the retroactive SSI amount initially only where a claimant actually received interim welfare assistance [7] and where there will be no subsequent SSI monthly benefits with which to reimburse the state. But for this Court to compel such a result would be an impermissible judicial exercise in administrative rule-making. At the same time, in analyzing the present administrative practice, we must recognize the difficulties faced by the Secretary in devising rules to deal with countless possible situations. "[C]oncern for a particularized situation is not grounds for voiding a regulation designed to deal with thousands of cases. As federal judges, we must leave the determination of policy to those with legislative authority." *Lugo, supra,* 776 F.2d at 1150. We are satisfied that the Secretary's practice is rationally designed to provide a systematic and reasonable means of handling numerous cases.

In summary, the offset provision is appropriately applied where both SSDI and SSI are awarded concurrently and retroac-

tively, and it is proper to make the SSI calculation first in order to assure a source of reimbursement to state welfare agencies.

### IV.

The central question on this appeal remains to be resolved: Is the Secretary permitted to calculate the attorney fee based on the past-due SSDI total *following* the offset? The district court and other courts that have rejected the Secretary's practice of assessing the attorney fee after the offset advance two contentions in support of their position: the reduction in attorney fees discourages professional representation of Social Security claimants, and there is no indication in the legislative history of the offset provision that that statute was designed to have such an impact. *See, e.g., Kovar,* 622 F.Supp. at 972; *Motley,* 605 F.Supp. at 92.

We agree that a valid public policy, expressed in § 406, favors encouragement of attorney representation of Social Security claimants. *Reid v. Heckler,* 735 F.2d 757, 762 (3d Cir.1984). But § 406 also represents a compromise between beneficiaries and their attorneys. In return for SSA's withholding of monies owed to attorneys, Congress limited the amount that could be withheld to 25% of retroactive benefits. A person who has lived for a period without disability benefits to which he or she is entitled is likely to have debts and be in financial straits. Congress' provision of retroactive benefits is designed to ameliorate this situation and permit some financial rehabilitation. Accordingly, Congress has taken steps to protect part of these benefits for the beneficiary's personal use. *See Burnett,* 756 F.2d at 626.

■ If the attorney fee is calculated before the offset, the statutory scheme is frustrated.[8] For example, if the claimant

---

7. It is unclear on the present record whether Wheeler received welfare benefits from the state of New Jersey.

8. This decision addresses the situation where only the SSDI application, and not SSI entitlement, is before the district court. As noted, *see* note 3 *supra,* if SSI is also before the court the attorney is entitled to up to 25% of those past-

received $2,000 in SSI benefits in 1985, and the retroactive SSDI award for that year is $5,000, the claimant retains $3,000. To calculate the attorney fee before this offset means that the attorney receives $1,250, or an impermissible 42% of the SSDI money actually received retroactively by the beneficiary.

The same problem will frequently arise when, as here, both SSI and SSDI are paid retroactively. In the situation posited above, the claimant would receive $2,000 in welfare in 1985, $2,000 in retroactive SSI paid to the state as reimbursement, and $3,000 (after offset) in retroactive SSDI; she would keep only $3,000. Under the Secretary's arrangement, the attorney receives 25% of the latter amount, rather than 25% of the $5,000 figure, a sum that the claimant does not actually receive. The method of determining attorney fees utilized by the agency is consonant with the allocation decreed by Congress, and is neither arbitrary nor unreasonable.[9]

This is a classic situation in which SSA is forced to reconcile several statutory policies: the desire to reduce windfalls to claimants when retroactive awards are made; the encouragement of legal representation of beneficiaries; the decision to protect 75% of past-due SSDI benefits disbursed to disabled recipients; and the need to reimburse state agencies for interim welfare assistance. The approach devised by the agency serves all of these purposes and does as little possible damage to each. Such balancing is the duty of the agency,

and in this case we cannot say that it abused its policy-making discretion.

From Paster's point of view, the import of today's decision may appear to be somewhat harsh; he maintains "that the attorney is forced to act as collection agent for the state and county welfare agencies with no compensation for legal services." In other words, when an attorney successfully argues for past-due SSDI benefits, he receives 25% of the SSDI monies awarded, but not 25% of the funds set aside as SSI benefits to be sent to the state welfare agencies. Although we understand this concern, the appropriate targets of the attorney's grievance would appear to be the Congress, which developed these programs, and the state agencies that benefit from counsel's services in arguing for the payments. Indeed, *Reid* indicates that the Commonwealth of Pennsylvania now pays a portion of its recovery to counsel in this type of situation. 735 F.2d at 759.

### V.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

due benefits. *Reid, supra.* This raises the question, particularly where reimbursement for welfare benefits is owed to the state, whether the attorney fee should still be calculated after the offset and after reimbursement of the state agency. This question was not at issue in *Reid,* because there the Commonwealth of Pennsylvania voluntarily agreed to pay the attorney a portion of its reimbursement. 735 F.2d at 759. We also need not resolve it today.

9. *See also Cloyd v. Weinberger,* 527 F.2d 1167 (6th Cir.1975). In *Cloyd,* the court held that a claimant's retroactive SSDI benefits should be reduced, due to receipt of workman's compensation benefits, before the attorney fee is calculated. The district court here viewed this decision

as inapplicable because there was no indication that the workman's compensation, like the SSI award here, was also retroactive. *See also Kovar,* 622 F.Supp. at 972 n. 8. We agree that *Cloyd* is not dispositive, but for different reasons. It involves the situation where an SSDI recovery is reduced due to receipt of workman's compensation benefits. *See* 42 U.S.C. § 424a (1982). In that context, the beneficiary may nevertheless keep the entire total, in contrast to the situation before us where the claimant probably owes the SSI payment to the state welfare agency. Because of this distinction, we need not resolve nor further address the computation of attorney fees where workman's compensation is implicated.