William R. WHITE, Madeleine Hyman, Juan Rosario, Martha Bess, Ramon Valle, and Constance Miraglia, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Otis R. BOWEN,* as Secretary of the Department of Health and Human Services, Defendant.

Carolyn CLEE, Sharon Grant, sole heirs of Harold Johnson, deceased, Plaintiffs,

v.

Otis R. BOWEN, as Secretary of the Department of Health and Human Services, Defendant.

George ORTEGA, Plaintiff,

v.

The SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

Nos. 85 Civ. 1493 (RLC), 85 Civ. 5931 (RLC) and 85 Civ. 8244 (RLC).

United States District Court, S.D. New York.

May 23, 1986.

* Otis R. Bowen, the sucessor to Margaret M. Heckler, has been substituted as defendant in this case pursuant to Rule 25(d)(1), F.R.Civ.P.

Westchester Legal Services, Inc., White Plains, N.Y. (Joy Blumkin, of counsel), Joan Mangones, The Legal Aid Society, Staten Island Neighborhood Office, Staten Island, N.Y. (Mary Megan McLemore, of counsel), John Kirklin, The Legal Aid Society, Civil Appeals & Law Reform Unit, New York, N.Y. (Nancy Morawetz, of counsel), Mar-

shall Green, The Legal Aid Society, Office, Bronx, N.Y. (Stephen J. Loffredo, of counsel), for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Donna H. Lieberman, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, David Engel, Asst. Regional Atty., Dept. of Health and Human Services, of counsel), for defendant.

OPINION

ROBERT L. CARTER, District Judge.

On October 24, 1985, the court, in an opinion with which familiarity is assumed, certified this case as a class action. *White v. Heckler,* 108 F.R.D. 85 (S.D.N.Y.1985) (Carter, J.). *Clee v. Heckler* and *Ortega v. Secretary* were consolidated with this case by Stipulation and Order dated April 1, 1986. The case is now before the court on defendant's motion for judgment on the pleadings and plaintiffs' motion for partial summary judgment.

*Facts*

Plaintiff class consists of "all persons residing in New York State who concurrently applied for, or were concurrently determined eligible for, disability benefits under Titles II and XVI of the Social Security Act ['the Act'] and whose retroactive Title II benefits were or will be reduced by defendant because defendant has paid or will pay to a local social services agency an amount alleged to be the benefit recipient's retroactive SSI benefits." The class challenges the way in which the Secretary calculates its retroactive benefits, and in a multi-pronged attack asserts that the Secretary's method of calculation violates: federal regulations, i.e. 20 C.F.R. §§ 404.408 and 416.1123(d); the Social Security Act, 42 U.S.C. §§ 407 and 1320a–6; the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Federal Register Act, 44 U.S.C. § 1501 et seq.; and the due process clause of the Fifth Amendment to the United States Constitution.

*A. The Statutory Scheme*

Each of the class members is a disabled worker who was found eligible for Old Age, Survivors and Disability Insurance ("OASDI") benefits under Title II of the Act, 42 U.S.C. § 401 et seq. At roughly the same time, each was also found eligible for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. OASDI and SSI share the same definition of disability, but each imposes a further prerequisite to eligibility. OASDI is an insurance program; OASDI claimants must be contributors to the social security trust fund, either through their own or through a family member's past earnings in covered employment. SSI, on the other hand, is a need-based program; SSI claimants must have income or resources that fall below a minimum subsistence level. 42 U.S.C. § 1382. The two programs differ in one other relevant way. OASDI benefits cannot be assigned to any creditor, 42 U.S.C. § 407, including state welfare agencies, *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). SSI benefits may, with the claimant's written permission, be paid to a state in order to reimburse it "for interim assistance furnished on behalf of the individual...." 42 U.S.C. § 1383(g)(1).

Benefits under both OASDI and SSI are awarded retroactively from the date eligibility is determined to the date of application. In addition, OASDI benefits may be awarded for up to twelve months prior to application. 20 C.F.R. § 404.621. Claimants receive their retroactive benefits in one lump-sum payment which, given the delay in processing claims, may reflect many months of benefits. These checks are counted as income for the purposes of SSI eligibility only in the month in which they are received. 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.1121(a) and 416.1123(a). Prior to 1981, this scheme generated a windfall for all SSI claimants eligible to receive retroactive OASDI benefits, including concurrent applicants. For the purpose of illustrating this windfall, assume a disabled claimant who received SSI benefits for

months in which he or she would also be eligible to receive OASDI benefits. If the OASDI payments that the claimant is entitled to receive were paid in those months, the claimant's SSI benefits would have been lower or even nonexistent, because the OASDI payments would be included in the claimant's income. The windfall was the SSI benefits that claimants would not have received but for the delay in OASDI payments. So long as retroactive SSI was calculated without regard to OASDI, concurrent applicants would receive the same windfall.

In 1980, Congress tried to close this loophole by amending the Act "to provide that an individual's entitlement under [SSI and OASDI] shall be considered as a totality...." S.Rep. No. 96–408, 96th Cong., 2d

Sess. 78 (1979), *reprinted at* 1980 U.S.Code Cong. & Ad.News 1277 at 1356. The 1980 enactment ("the windfall offset statute"), Pub.L. 96–265, Title V, § 501(a), 94 Stat. 469, *codified at* 42 U.S.C. § 1320a–6,[1] allows SSI payments to be offset from the OASDI retroactive payment. As will be discussed more fully below, this bill did not explicitly cover the situation of a claimant who concurrently applied for SSI and OASDI benefits. The Secretary, however, applied the windfall offset statute to concurrent applications. 20 C.F.R. § 404.408b. In 1984, Congress revised the windfall offset statute. Pub.L. 98–369, Title VI, § 2615(a), 98 Stat. 1132, *codified at* 42 U.S.C. § 1320a–6. The new windfall offset statute explicitly covers concurrent applicants.[2]

**1.** The original windfall offset statute provided that:

Notwithstanding any other provision of this chapter, in any case where an individual—

(1) makes application for benefits under subchapter II of this chapter and is subsequently determined to be entitled to those benefits, and

(2) was an individual with respect to whom supplemental security income benefits were paid under subchapter XVI of this chapter (including State supplementary payments which were made under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212 of Public Law 93–66) for one or more months during the period beginning with the first month for which a benefit described in paragraph (1) is payable and ending with the month before the first month in which such benefit is paid pursuant to the application referred to in paragraph (1),

the benefits (described in paragraph (1)) which are otherwise retroactively payable to such individual for months in the period described in paragraph (2) shall be reduced by an amount equal to so much of such supplemental security income benefits (including State supplementary payments) described in paragraph (2) for such month or months as would not have been paid with respect to such individual or his eligible spouse if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due during such period rather than retroactively; and from the amount of such reduction the Secretary shall reimburse the State on behalf of which such supplementary payments were made for the amount (if any) by which such State's expenditures on ac-

count of such supplementary payments for the period involved exceeded the expenditures which the State would have made (for such period) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due during such period rather than retroactively. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence will be covered into the general fund of the Treasury.

**2.** The new statute now reads:

(a) Notwithstanding any other provision of this chapter, in any case where an individual—

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the months in which they were regularly due; and

(2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (1) were regularly due, then any benefits under subchapter II of this chapter that were regularly due in such month or months, or supplemental security income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under subchapter II of this chapter in the month or months in which they were regularly due.

(b) For purposes of this section, the term "supplemental security income benefits"

## B. The Challenged Procedure

While awaiting their first federal benefit checks, the members of the plaintiff class were forced to subsist on state welfare payments. Plaintiffs' 3(g) Statement, ¶ 5. Once they were found eligible for SSI and OASDI, the Secretary computed their benefits as follows.[3] First, the SSI payment was calculated as though the claimant were not eligible for OASDI. Then, the SSI payment was sent to the state welfare agency. The Secretary then calculated each claimant's OASDI, subtracting the full sum of SSI that had been forwarded to the state welfare agency. By means of this calculation, SSI benefits that the claimants never received were subtracted from their OASDI payment, and retained by state welfare agencies. This procedure is mandated by an internal memorandum, Program Operations Manual System, ("POMS"), §§ GN2610.005 and GN2610.-045. POMS is not published in the Federal Register; it is, however, available to the public for photocopying.

### Discussion

The practice at issue in this case has already been scrutinized by three Courts of Appeal and one court in this Circuit. *See McKenzie v. Bowen*, 787 F.2d 1216 (8th Cir.1986); *Burnett v. Heckler*, 756 F.2d 621 (8th Cir.1985); *Wheeler v. Heckler*, 787 F.2d 101 (3d Cir.1986); *Detson v. Schweiker*, 788 F.2d 372 (6th Cir.1986); *Gallo v. Heckler*, 600 F.Supp. 1513 (E.D.N.Y.1985). Each of these courts has upheld the practice at issue here; *McKenzie v. Bowen*,

*supra*, sustained it against an identical challenge. We see no reason to depart from these rulings.

■ We begin by looking at the words of the 1980 statute. Plaintiffs make much of the words "were paid" in the second subsection, interpreting them to mean that the windfall offset statute applies only to persons who actually received SSI benefits (i.e. does not apply to concurrent applicants). At best the statute is ambivalent on this score, because it also speaks of individuals who received payments "for" one or more months, rather than "in" those months. Thus, the statute is open to the interpretation that the Secretary has given it in 20 C.F.R. § 404.408b, applying it to concurrent applicants. *See Wheeler, supra*, at 106. Of course, we are bound to uphold the Secretary's interpretation of the Act so long as it is reasonable. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Given the lack of precision in the wording of the original statute, we cannot say that the Secretary's interpretation was unreasonable. The Secretary did not violate the original windfall offset statute by applying it to concurrent applicants.

■ The amended statute explicitly covers concurrent applicants. Therefore, the challenged practice violates § 1320a–6 neither as originally passed, nor as amended. The question then becomes, does the practice of calculating SSI first in determining

means benefits paid or payable by the Secretary under subchapter XVI of this chapter, including State supplementary payments under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212(b) of Public Law 93–66.

  (c) From the amount of the reduction made under subsection (a) of this section, the Secretary shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the

benefits under subchapter II of this chapter at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury.

**3.** Plaintiffs do not know if the Secretary has consistently followed this procedure to compute benefits since February 1, 1985, the effective date of the 1984 amendment. This lawsuit does not challenge any procedure but that mandated by POMS §§ GN2610.005 and GN2610.045. Therefore, since we hold that the challenged procedure is lawful, we cannot permit plaintiffs to proceed with discovery to determine whether there is a basis to challenge any newly implemented practice.

retroactive benefits violate § 407 of the Act, the anti-assignment provision? We join with the chorus of other courts that have addressed this issue, and hold that it does not. *See, e.g., Wheeler, supra,* at 106 n. 6; *McKenzie, supra,* at 1222; *Gallo,* 600 F.Supp. at 1517.

Section 407 bars assignment of "[t]he right of any person to any future payment." 42 U.S.C. § 407(a). Plaintiffs and the Secretary disagree as to how this "right to any future payment" comes into being. Plaintiffs reason that they have a right to OASDI benefits calculated as if there were no delay in receiving payment. Because OASDI benefits are calculated first for prospective payments, plaintiffs assume that their right is to retroactive benefits calculated in the same way. In other words, they feel that the prospective benefit defines their right to OASDI for all purposes. Whenever the Secretary fails to calculate OASDI benefits first, he fails to calculate the full payment to which the plaintiffs believe themselves entitled.

On the other hand, the Secretary argues that the right to an OASDI payment exists only after OASDI has been calculated, and that he is free to make such a calculation either before or after SSI, for retroactive payments. There is no right to retroactive OASDI calculated in the same way as prospective OASDI, and the method of calculation used for prospective OASDI does not define the entitlement for all purposes. Nothing in § 407, or any other part of the Act that has been brought to the court's attention, bars the Secretary's approach. Plaintiffs have no right to retroactive OASDI calculated as if it were prospective. Because plaintiffs' rights only begin after the calculation of OASDI, the Secretary's practice does not assign anybody's right to OASDI because no OASDI benefit exists until after the SSI benefit has been calculated. As Judge Timbers, sitting by designation on the Eighth Circuit, explained it: "The anti-alienation provision [§ 407] does not delineate the method or order of calculating benefits. The statute merely provides that Title II bene-

fits [OASDI], whenever computed, may not be assigned." *McKenzie,* at 1222. Plaintiffs argue that the language of the 1984 amendment requires retroactive OASDI benefits to be calculated as if they were prospective benefits. That reading is incorrect. The 1984 amendment requires that the *total* benefit package of OASDI and SSI be calculated as if it were a prospective benefit.

Plaintiffs contend that the Secretary's practice is simply a formalistic means of complying with § 407's requirements, and that in effect, he converts OASDI payments into SSI when he reimburses the state. This argument assumes that SSI that is not calculated as if it were prospective is not "really" SSI. Again, there is nothing in the Act that would require the retroactive SSI payment to be calculated as if prospective, i.e. with reference to an expected OASDI payment. Again, the 1984 amendment requires only that the total benefit package be calculated to give the claimant what he or she would have received were the payments timely.

Finally, we note that the Secretary's practice is fully consistent with Congress's intent to prevent windfalls. If the Secretary calculated OASDI first, there would be a windfall to claimants, such as these plaintiffs, who received state welfare benefits that they would not have received had their federal payments been made on time. The legislative histories of the 1980 and 1984 amendments do not distinguish between windfalls at state or at federal expense. Plaintiffs read this to mean that Congress did not intend to prevent windfalls to claimants that would come out of the state's pocket. This reading is at odds with both common sense and with the overall scheme of the Act, which contemplates shared federal and state responsibility for funding and administering benefits programs. The Secretary's practice does not violate § 407 and fulfills the purpose of § 1320a–6, as originally passed and as amended.

This discussion necessarily leads the court to conclude that the implementation

of POMS §§ GN2610.005 and GN2610.045 does not violate the APA. Although the APA requires that agency rules be subject to notice-and-comment rulemaking, 5 U.S.C. § 553, interpretative rules are exempt from this requirement. 5 U.S.C. § 553(b)(A). The substantive/interpretative rule distinction is somewhat elusive. Nonetheless, we have no difficulty in determining that the rules at issue here are interpretative. In drawing the line between substantive and interpretative rules, the Second Circuit no longer looks to the impact of a rule, as it did in *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir.1972), but focuses instead upon the change in law effected by a rule. "Only rules that do not change 'existing rights and obligations' are considered interpretative." *Donovan v. Red Star Marine Services, Inc.*, 739 F.2d 774 (2d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985). The POMS provisions did not alter any right. Congress changed the plaintiffs' rights when it passed the windfall offset statute. The POMS provisions are simply an administrative means of effecting that change. The promulgation of the Secretary's procedure absent notice-and-comment rulemaking does not violate the APA.

■ Similarly, the Secretary has not violated the FOIA, which provides for publication of "substantive rules of general applicability." 5 U.S.C. § 552(a)(1)(D). The POMS rules are not substantive. We need not reach the issue of whether plaintiffs had "actual and timely notice" of the procedure, since there is no requirement that they be published. In addition, because there is no statutory requirement that the POMS guidelines be published, the Federal Register Act has not been violated. That act requires Federal Register publication only of "documents or classes of documents that may be required so to be published by Act of Congress." 44 U.S.C. § 1505(a)(3).

■ Finally, the Secretary's procedure does not violate plaintiffs' rights under the Due Process clause of the Fifth Amend-

ment. As elaborated above, there has been no deprivation of property.

Defendant's motion for judgment on the pleadings is granted, and plaintiffs' motion for partial summary judgment is denied. The complaint is dismissed.

IT IS SO ORDERED.