**Fred BAKER, Plaintiff–Appellee,**

v.

**Otis R. BOWEN, Secretary of Health & Human Services, Defendant–Appellant.**

No. 86–4030.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 12, 1987.

Decided Dec. 23, 1987.

Reconsideration Granted and Opinion Vacated Feb. 29, 1988.*

* Opinion on reconsideration, 839 F.2d 1197.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Larry K. Banks, Office of the Gen. Counsel, Baltimore, Md., for defendant-appellant.

James Roy Williams (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before KRUPANSKY and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

The Secretary of Health and Human Services (the Secretary) appeals from an order of the district court denying his motion to alter or amend the judgment ordering the Secretary to withhold twenty-five percent of the claimant's total retroactive Title II benefits undiminished by the windfall offset provided at 42 U.S.C. § 1320a–6 for the purpose of awarding attorney fees upon proper application of plaintiff's attorney pursuant to 42 U.S.C. § 406(b)(1). The Secretary argues that this case is controlled by the principles enunciated in *Detson v. Schweiker,* 788 F.2d 372 (6th Cir.1986). We agree, and for the following reasons we reverse the district court's judgment.

**I.**

On January 18, 1983, Fred Baker applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Title II benefits) and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* (SSI benefits). His claims were denied by the Secretary. Baker sought review before the district court and on September 17,

1985, the district court reversed the Secretary's decision and found Baker disabled and thus eligible for Title II and SSI benefits.[1] Plaintiff was awarded SSI benefits beginning January 18, 1983 and Title II benefits beginning May, 1983.

The Secretary then calculated the amount of retroactive SSI benefits and Title II benefits payable to the claimant. Baker's retroactive SSI benefits were sent to the state of Ohio pursuant to the terms of an interim assistance reimbursement agreement.[2] The State retained part of Baker's SSI benefits as reimbursement for interim assistance that it had paid him and forwarded him the balance. Retroactive Title II benefits were calculated, and pursuant to section 1320a–6 were offset by the amount of the retroactive SSI benefits to which he would not have been entitled had he been paid the Title II benefits when they were due rather than retroactively.[3] The Secretary then withheld twenty-five per-

cent of the net past-due benefits to cover attorney fees pursuant to section 406(b)(1).

Baker's attorney filed a motion for attorney fees, asking that the court order the Secretary to calculate and pay Title II benefits before paying SSI benefits. This would have enabled Baker's attorney to receive twenty-five percent of the retroactive Title II benefits unreduced by the windfall offset. Instead of granting the motion exactly, the court on May 19, 1986, ordered the Secretary to withhold twenty-five percent of the total Title II benefits undiminished by the windfall offset. The Secretary filed a motion to amend or alter the judgment, which was denied on September 4, 1986. The Secretary timely appeals from this order.

## II.

The awarding of attorney fees in Title II disability benefits cases is governed by section 206(b)(1) of the Act, 42 U.S.C. § 406(b)(1).

---

1. The Secretary does not seek review of this decision.

2. 42 U.S.C. § 1383(g)(1) provides in pertinent part that,

the Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Secretary and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision).

3. Section 1320a–6 was amended by section 2615(a) of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 1132, effective February 1, 1985. The amended section which is applicable to this case reads as follows:

(a) Notwithstanding any other provision of this chapter, in any case where an individual—

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the months in which they were regularly due; and

(2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (1) were regularly due, then any benefits under subchapter II of this chapter that were regularly due in such month or months, or supplemental security

income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under subchapter II of this chapter in the month or months in which they were regularly due.

(b) For purposes of this section, the term "supplemental security income benefits" means benefits paid or payable by the Secretary under subchapter XVI of this chapter, including State supplementary payments under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212(b) of Public Law 93–66.

(c) From the amount of the reduction made under subsection (a) of this section, the Secretary shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury.

Whenever a court renders a judgment favorable to a claimant under [Subchapter II] who was represented before the court by an attorney, the court may determine and award as part of its judgment a reasonable fee for such representation, *not in excess of twenty-five percent of the total of the past-due benefits to which the claimant is entitled* by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1) (emphasis added). A regulation promulgated by the Secretary defines "past-due benefits" as "the total amount of benefits payable under Title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or decision, up to but not including the month the determination or decision is made." 20 C.F.R. § 404.1703. Based on this regulation the Secretary took the approach that the amount of past-due benefits subject to the withholding provision of 42 U.S.C. § 406(b)(1) must be reduced by the SSI windfall offset even in a case where Title II and SSI benefits are concurrently adjudicated and the SSI benefits are paid retroactively.

In *Detson*, 788 F.2d 372, this court upheld the Secretary's approach to the calculation of attorney fees under section 406(b)(1) when Title II and SSI benefits are paid concurrently and the SSI windfall offset is involved. The court declared that "[a]ll future calculations of attorney's fees made by courts within this Circuit pursuant to § 406(b)(1) shall be made in accordance with the Secretary's approach." *Id.* at 376. The court noted, however, that the amended version of section 1320a–6 was inapplicable to the case before it since the offset had been applied prior to February 1, 1985 (the effective date of the amendment). *Detson*, 788 F.2d at 373 n. 2.

Prior to the amendment, the windfall offset could only be applied to Title II benefits. Therefore, when Title II benefits were paid before SSI benefits the Secretary was precluded from applying the windfall offset. *See Burnett v. Heckler*, 756 F.2d 621, 628 n. 4 (8th Cir.1985). The amendment to section 1320a–6 closed this loophole by allowing the Secretary to apply the windfall offset to whichever benefit is paid second. Neither the amendment nor its legislative history discuss the issue of attorney fees.

In opposing the district court's order, the Secretary relies on his interpretation of the phrase "past-due benefit" in section 406(b)(1), which was upheld by this court in *Detson*. The Secretary also argues that the court's order would be detrimental to state welfare agencies and would contravene the policy of the interim reimbursement assistance program.

Appellee, relying on the language in footnote two, argues that the change in the law takes the case outside of the holding in *Detson*, 788 F.2d 372, but does not present any reasoning behind this argument. Instead, appellee argues that the application of the windfall offset acts as a disincentive to representation of social security applicants, and artificially reduces the amount of benefits from which an attorney fee is calculated. Appellee also argues that under section 1320a–6 as amended, the Secretary is obligated to pay the past-due benefits from the first type of benefit which was ready to be effectuated. We find no such provision in the statute or its legislative history. "The statute, however, is silent as to whether [retroactive Title II] benefits must be calculated first." *McKenzie v. Bowen*, 787 F.2d 1216, 1221 (8th Cir.1986) (upholding Secretary's policy of first calculating retroactive SSI benefits in cases of concurrent application). Finally, he argues that this court should reconsider the decision in *McCarthy v. Secretary of Health & Human Services*, 793 F.2d 741 (6th Cir.1986) holding that the district court

does not have the power to deduct attorney fees from SSI benefits.[4]

In analyzing this issue under the original windfall offset provision, this court was persuaded by the analysis and holding of *Burnett v. Heckler,* 756 F.2d 621 (8th Cir. 1985). The only portion of the *Burnett* analysis that is changed by the amendment is the language in footnote four pertaining to the fact that under the original section, the Secretary was precluded from applying the windfall offset when Title II benefits were paid first. While this may have been one reason for the Eighth Circuit's decision upholding the Secretary's interpretation of the statute, it was not the portion of the analysis relied on by this court in *Detson,* 788 F.2d 372.

Most of appellee's arguments are an attempted rejuvenation of the attorney incentive arguments that were considered and dismissed in *Detson,* where this court was persuaded by the following policy considerations articulated by the Eighth Circuit in *Burnett,* 756 F.2d 621.

> The court recognized that this method of calculating the withholding amount would necessarily reduce attorney's fees, thereby constituting a financial disincentive to representing disability claimants. The court was unpersuaded that the financial disincentive mandated a contrary result, however. The court observed that 'the Secretary's approach ... does produce a public benefit because it preserves a greater portion of the benefits for the claimant.' The court also found that the Secretary's approach does not disrupt the primary financial incentive of § 406. The court concluded that the primary financial incentive provided by § 406 is not the *amount* of attorney's fees but is the *direct payment* of fees. Pursuant to § 406, the Secretary must pay the withheld attorney's fees directly to the attorney, thereby avoiding problems of collection from the claimant. The court correctly stated that this financial incentive is unaffected by the Secretary's method of calculating the withholding amount. Also, the court stated

that 'computation of attorney's fees on the basis of the net amount of benefits is consistent with the Congressional goal of insuring that disability benefits are not consumed by attorney's fees.'

*Detson,* 788 F.2d at 375–76 (quoting *Burnett,* 756 F.2d at 625–26). We do not find that the change in the statute, which does not address the attorney fees issue, but closes the loophole through which the SSI windfall previously could fall, changes this analysis.

Appellee's next argument is that the Secretary's interpretation of 1320a–6 artificially reduces the amount of past-due benefits from which attorney fees can be paid. A similar argument was made in *Wheeler v. Heckler,* 787 F.2d 101, 106 (3rd Cir.1986), a pre-amendment case. The argument was rejected.

> In making this complicated argument Paster assumes that it makes no difference to SSA or the claimant whether the SSI or [Title II] amount is calculated initially, since the same *total* award is made; only the attorney suffers.... If this assumption were true, it would create a persuasive argument for agreeing with the district court that the Secretary's practice has the sole effect of "artificially reducing" the attorney fee for only capricious purposes.

> However, SSA has a valid reason to make the SSI calculation first. One party that stands to gain when this happens, and an SSI award is therefore announced, is the welfare agency of the state where the applicant resides. When a claimant first applies for SSI there is a delay before eligibility is determined and during that time an indigent person is likely to seek welfare assistance from the state. To encourage states to provide such assistance, Congress provides that the claimant may authorize the Social Security Administration to withhold SSI benefits and pay them to the state as reimbursement for interim welfare assistance paid to the applicant. 42 U.S.C. § 1383(g)(1) (1982).

---

**4.** The question of whether this court should reconsider its holding in *McCarthy* has not been

properly presented, *see* Fed.R.App.P. 35, and will not be considered by this panel.

If SSI is *not* calculated first when concurrent, retroactive awards of SSI and [Title II] benefits are made the state may never be reimbursed. This not only would contravene the Congressional intent to encourage state assistance during the interim period, but also would mean that the claimant receives a windfall: the full [Title II] amount plus welfare benefits that would never have been paid had the [Title II] monies been disbursed at the appropriate time. The Secretary's practice of determining SSI initially and assuring that there is SSI money available for reimbursement is therefore not capricious, but rather consistent with Congress' goals.

*Wheeler*, 787 F.2d at 106 (citations omitted) (footnote omitted). *See also McKenzie v. Bowen*, 787 F.2d 1216, 1221 (8th Cir.1986) ("[t]he windfall which concerned Congress relates both to offsetting [retroactive Title II] and SSI benefits and to offsetting these federal disability benefits and local welfare assistance").

To counter this argument appellee asserts that the Secretary can reimburse the state welfare agency from prospective SSI benefits. This argument was also addressed and dismissed in *Wheeler*, 787 F.2d 101.

This assertion ignores a basic facet of the Social Security scheme: One who is disabled receives SSI only if he or she is not adequately insured under the [Title II] program, and indeed many [Title II] recipients are sufficiently insured so that their monthly benefits exceed the maximum allowable income for SSI purposes. Wheeler's case provides an example. While awaiting a determination of her [Title II] application, the only reason she applied for SSI was that she was receiving no benefits of any kind at the time. Now that she will be receiving monthly [Title II] payments, her insured status is such that she is probably ineligible for SSI. Since a state may be repaid for welfare assistance only from SSI funds, its sole opportunity for repayment by such a claimant arises when the retroactive award is made.

*Id.* at 107. We do not see how the amendment to section 1320a–6 changes this analysis.

The closing of the offset loophole alleviated only one of the problems which arose when a claimant who received state welfare assistance under an interim assistance agreement received concurrent retroactive SSI and Title II benefits. However, the inability to deduct the windfall from SSI benefits was not the only basis for the Secretary's policy of paying SSI benefits first.

This is a classic situation in which SSA is forced to reconcile several statutory policies: the desire to reduce windfalls to claimants when retroactive awards are made; the encouragement of legal representation of beneficiaries; the decision to protect 75% of past-due [Title II] benefits disbursed to disabled recipients; and the need to reimburse state agencies for interim welfare assistance. The approach devised by the agency serves all of these purposes and does as little possible damage to each. Such balancing is the duty of the agency, and in this case we cannot say that it abused its policy-making discretion.

*Wheeler*, 787 F.2d at 108. Because many of the policies which support the Secretary's approach have not been altered by the amendment to section 1320a–6, we believe that *Detson*, 788 F.2d 372 is still controlling, and that the Secretary is not compelled to pay Title II benefits before paying SSI benefits.

Accordingly, we REVERSE the judgment of the district court directing the Secretary to withhold twenty-five percent of claimant's total Title II benefits undiminished by the section 1320a–6 offset. We REMAND and direct the court to award a fee in the amount of twenty-five percent of the net past-due benefits.