**John PAPPAS, Richard Stehr, Individually and on behalf of all others similarly situated, Plaintiffs–Appellees,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellant.**

**No. 230, Docket 88–6139.**

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1988.

Decided Dec. 8, 1988.

Bruce H. Nims, Sp. Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty., E.D. of New York, of counsel), for appellant.

Victor Fusco, Hempstead, N.Y. (Scheine, Fusco, Brandenstein & Rada, P.C., of counsel), for appellee-Pappas.

Ira S. Schneider, Hempstead, N.Y., for appellee-Stehr.

Before OAKES, MINER and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

The Secretary of the United States Department of Health and Human Services (the "Secretary") appeals from an order of the United States District Court for the Eastern District of New York (Korman, J.) remanding plaintiffs' action to the Secretary with specific instructions for calculation of attorney's fees pursuant to 42 U.S.C. § 406 (1982). The Secretary had determined that plaintiffs Pappas and Stehr were entitled to retroactive benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433 (1982), and Title XVI of the Act, 42 U.S.C. §§ 1381–1383 (1982). The Secretary then calculated attorney's fees, pursuant to section 406, as a percentage of Title II benefits that remained after offset for Title XVI benefits. In the district court, Pappas and Stehr challenged the Secretary's method for calculat-

ing attorney's fees. The district court, agreeing with the plaintiffs that attorney's fees were computed improperly, held that these fees should be calculated prior to any offset of Title II benefits by Title XVI benefits.

On appeal, the Secretary argues that the district court erred in the method it ordered to be used for these calculations. We uphold the method established by the Secretary for computing attorney's fees in cases where benefits under both Titles II and XVI of the Social Security Act are awarded retroactively. We therefore reverse and remand for the entry of judgment in accordance with the Secretary's calculation of attorney's fees.

## BACKGROUND

### A. *Statutes and Regulations*

The disabled and needy are assisted by separate federal programs established under Titles II and XVI of the Act. Each of these programs provides monthly cash payments to those deemed eligible by the Secretary. Title II provides for disability insurance funded by worker and employer contributions. Title XVI authorizes the payment of Supplemental Security Income ("SSI"), is independent of a claimant's insured status and provides, from federal moneys, a minimum monthly income for those in need. Whereas Title II establishes an insurance program available to all contributors, SSI is a need-based program available to claimants whose income and resources fall below a minimum subsistence level.

Many claimants file concurrently for benefits under both Titles II and XVI. When determining SSI eligibility, Title II payments are considered income and can reduce, if not completely eliminate, Title XVI awards. Title XVI payments, however, do not affect Title II eligibility. From time to time, claimants engage attorneys to assist them in pursuing their claims for these benefits. Attorney's fees for services rendered in Title II claims can be awarded either administratively or by a court, depending on whether the services are ren-

dered in an administrative proceeding or court action.

Section 406(a) of the Act governs administrative determinations of attorney's fees. The Secretary must fix "a reasonable fee to compensate [an] attorney for the services performed by him," 42 U.S.C. § 406(a). The Secretary further is required to withhold up to 25% of the total amount of "past-due [Title II] benefits," *id.*, in order to pay the attorney directly. The amount withheld from a claimant's Title II entitlement for direct payment of attorney's fees is limited to the smaller of: 25% of the total past-due benefits, the reasonable amount fixed by the Secretary or an amount agreed upon by the claimant and his attorney, *id.* If a fee greater than the 25% direct payment limit is fixed by the Secretary or agreed upon by the attorney and claimant, the attorney is free to arrange with the client collection of the remainder of the fee.

Section 406(b) allows a court that directs entry of judgment in favor of a claimant to authorize attorney's fees, not greater than 25% of the past-due benefits. The Secretary then may withhold this court-ordered amount from the claimant's retroactive Title II award and pay the attorney directly. No other fee can be paid to the attorney when a court orders attorney's fees. 42 U.S.C. § 406(b)(1). Thus, the maximum an attorney can expect when a court orders his fee is 25% of a claimant's Title II award.

Significantly, section 406 applies only to attorney's fees in Title II cases. Title XVI, in contrast to Title II, contains no provision concerning attorney's fees and, consequently, Title XVI funds cannot be used for attorney's fees. *Bowen v. Galbreath,* —— U.S. ——, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988).

Because there is a lag between the time a claimant applies for federal aid and the time he is adjudged eligible, most successful claimants eventually receive a retroactive lump-sum benefits payment. When Title II benefits are awarded in one retroactive payment, those benefits are not charged as income to the past months for

which the claimant may have been awarded Title XVI benefits. This is so because Title II benefits constitute income only for the months in which they are received, 20 C.F.R. § 416.1123 (1988). The result, prior to 1980 remedial action by Congress, was a windfall of SSI payments for the claimant.

While awaiting a determination of Titles II and XVI eligibility, many claimants turn to the state for interim SSI assistance. A claimant receiving this temporary aid typically authorizes the Secretary to withhold funds sufficient to reimburse the state from his eventual retroactive SSI award. The Act specifically provides for this reimbursement practice, but only allows Title XVI, not Title II, awards to be so tapped. *See* 42 U.S.C. §§ 407, 1383(g).

Interim assistance from the state created another windfall for claimants. Eligibility for interim aid, as for SSI, depends upon a claimant's income, which includes federal benefits, falling below a minimum subsistence level. A delayed award of federal benefits allows a claimant to receive state interim SSI that would not have been his due had the benefits been paid on time.

Accordingly, Congress in 1980 enacted a "windfall offset" provision to Title II, 42 U.S.C. § 1320a–6 (1982), so that when a claimant is granted a retroactive Title II award for a period in which he also was owed SSI, the Title II payment is reduced by the amount of SSI authorized to the claimant that would not have been awarded had the claimant been given his Title II benefits when due, rather than retroactively. The Secretary, applying the windfall offset provision, calculates first a claimant's SSI benefits, then the Title II benefits, and then offsets Title II benefits due by the SSI amount, 20 C.F.R. § 404.408

(1988); *see White v. Bowen*, 835 F.2d 974 (2d Cir.1987). Because Title II benefits are not factored into the SSI computation as income, the SSI figure is higher than if Title II would have been calculated first. Thus, the state, able to anticipate only Title XVI funds, generally can expect to be reimbursed fully for its interim SSI payments. From a claimant's perspective, this is all purely a matter of bookkeeping, as his overall cash entitlement is not affected by the order of computations.

Attorney's fees are drastically affected by this application of section 1320a–6 because they are linked to the amount of past-due Title II benefits only. The Secretary defines "past-due" Title II benefits as Title II benefits actually payable, 20 C.F.R. § 404.1703 (1988), i.e. net, post-offset Title II benefits. As a result, the fund from which attorney's fees are calculated under section 406(a) often is reduced. Plaintiffs urge a computation of attorney's fees from a gross, pre-offset Title II fund.[1]

### B. *Facts*

The facts of this consolidated case are undisputed. On August 7, 1981, John Pappas filed concurrent applications for benefits under Titles II and XVI. After his applications were denied, he requested a hearing, and on September 30, 1982, an administrative law judge ("ALJ") issued a decision finding that Pappas was entitled to benefits under both Title II and Title XVI as of September 1981. Accordingly, on November 29, 1982, Pappas was notified that he was entitled to $3,840.21 in retroactive SSI for the period September 1981 through November 1982.

On December 23, 1982, Pappas was advised that the Secretary had not yet deter-

---

1. An example developed by another court illustrates the two approaches:

[A]ssume a claimant is entitled to $10,000 in Title II benefits and $9,000 in Title XVI benefits, each entitlement calculated independently of the other. If Title II benefits are paid first, the court can authorize up to $2,500 (25% of $10,000) in attorneys' fees under § 406(b) and the Secretary can withhold and pay directly to the attorney up to $2,500 under either § 406(a) or (b). However, assume the $9,000 in Title XVI benefits are paid first.

Under § 1320a–6, the $10,000 Title II entitlement must be offset by the $9,000 Title XVI award, leaving only $1,000 in Title II benefits. The result is that the court could authorize only $250 in attorneys' fees under § 406(b) and the Secretary could withhold and pay directly to the attorney only $250 under either subsection (a) or (b).

*Guadamuz v. Heckler*, 662 F.Supp. 1060, 1063 n. 2 (N.D.Cal.1986), *rev'd*, 859 F.2d 762 (9th Cir. 1988).

mined the amount of his retroactive Title II benefits, but that, pursuant to 42 U.S.C. § 1320a–6, such benefits would be reduced if he were owed SSI for the period in which he would receive Title II. Accordingly, on June 9, 1983, he was informed that his Title II benefits for the period March 1982 through October 1982 would be reduced by $2,161.28 because of the SSI he had been awarded for that period. In addition, he was advised that 25% of the remaining Title II benefits, or $40.30, would be withheld for attorney's fees, pursuant to section 406 of the Act.

Richard Stehr filed concurrent applications for benefits under Titles II and XVI on November 1, 1982. On October 27, 1983, an ALJ determined that Stehr was entitled to both Title II benefits and SSI. On January 10, 1984, Stehr was informed that his Title II benefits accrued as of March 1983 but that he would not receive those benefits until his SSI for that period was determined.[2]

On February 13, 1984, Stehr was advised that, although he was ineligible for prospective SSI benefits, he was entitled to $2,637.29 in retroactive SSI for the period November 1982 through January 1984. On April 27, 1984, he was notified that his retroactive Title II benefits would be reduced by $1,979.75 to offset his SSI for that period. In addition, $533.54, 25% of his retroactive, post-offset Title II benefits, would be withheld for direct payment of attorney's fees.

Both Pappas and Stehr challenged the Secretary's method for calculating retroactive benefits and attorney's fees in concurrent Title II and Title XVI cases before an ALJ and the Department's Appeals Council. When their administrative appeals failed, both filed actions in district court. After affirming the Secretary's method of calculating retroactive SSI prior to retroactive Title II benefits, in light of *White v. Bowen, supra,* the district court remanded the cases to the Secretary with instructions that attorney's fees be calculated prior to the deduction of SSI benefits. The Secretary now appeals the district court's order.

## DISCUSSION

The Secretary's interpretation and application of section 406 and section 1320a–6 must be upheld, unless they are arbitrary, capricious, contrary to statute, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), or plainly wrong, *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). Therefore, the question this Court must answer is not whether it can fashion a method of disbursement of benefits to all interested parties more equitable than the Secretary's method, but simply whether the Secretary's approach is based upon a permissible construction of the relevant statutes. *See Chevron,* 467 U.S. at 843–45, 104 S.Ct. at 2781–82. After examining the Secretary's method of calculating section 406(a) attorney's fees, we conclude that his application of section 1320a–6 in concurrent benefits cases does not contravene the purposes of section 406 and reasonably accords with his statutory authority.

The Secretary is constrained to reconcile a variety of statutory interests that compete for a finite amount of money. Attorneys demand fees, claimants need protection of their past-due benefits and the state requires reimbursement for interim aid outlays. See *Wheeler v. Heckler,* 787 F.2d 101, 108 (3d Cir.1986). Accordingly, the public policies that form the background of the act go to the heart of this conflict.

Section 406, Title II's provision for attorney's fees, was enacted to (1) protect claim-

---

**2.** 42 U.S.C. § 1320a–6 was amended, effective February 1, 1985, to include technical corrections. Originally, § 1320a–6 applied only when Title XVI benefits had been paid before Title II benefits. Accordingly, the Secretary always would determine Title XVI first and then Title II; he apparently did just that in the case of plaintiff Stehr. The amendment merely allows for the § 1320a–6 offset regardless of the order in which the Title II and Title XVI benefits were calculated and paid. Because plaintiffs' awards were determined before the effective date of the amendment, the provision's original version applies here. The amendment does not affect the substantive issues raised in this case.

ants from excessive legal fees, particularly fees derived from contingency arrangements, *Dawson v. Finch*, 425 F.2d 1192, 1194 (5th Cir.) (citing Hearings on H.R. 675 Before the Senate Comm. on Finance, 89th Cong., 1st Sess. 12–13 (1965)), *cert. denied*, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970), and (2) encourage legal representation of Social Security claimants, *id.; see Wheeler*, 787 F.2d at 107.

Both sections 406(a) and 406(b) protect claimants from excessive legal fees, primarily by the requirement found in each provision that the Secretary or court grant an attorney only a "reasonable" fee. *See Reid v. Heckler*, 735 F.2d 757, 760–61 (3d Cir.1984). Claimants are further protected from unreasonable fees by section 406(b)'s cap of 25% of Title II benefits on court-ordered fees. Finally, both sections 406(a) and 406(b) restrict direct payment of attorney's fees to 25% of a claimant's Title II award.[3]

Claimants are protected from excessive legal fees by the Secretary's practice of offsetting Title II benefits before awarding attorney's fees. *Motley v. Heckler*, 800 F.2d 1253, 1255 (4th Cir.1986); *Wheeler*, 787 F.2d at 108; *Burnett v. Heckler*, 756 F.2d 621, 625 (8th Cir.1985). The fear of lawyers overcharging, however, is allayed adequately by the Act's provisions, thus rendering unnecessary, but certainly not improper, protection of a social security claimant by the Secretary's practice.

Encouragement of legal representation, the much-noted other goal of section 406, *see, e.g., Guadamuz v. Bowen*, 859 F.2d 762, 768–69 (9th Cir.1988), is not completely contravened by the Secretary's application of section 1320a–6. Clearly, the Secretary's policy can reduce attorney's fees, but the Act guarantees collection of section 406(a) or section 406(b) attorney's fees with its direct payment feature. The Secretary's section 1320a–6 offset may impede the incentive for legal representation of social security claimants by foreclosing adequate attorney's fees. This disincentive, however, is partially offset by the direct

payment characteristic of Title II, *see Dawson*, 425 F.2d at 1195.

The spectre of attorneys not actively pursuing a client's Title XVI claim or refusing to represent claimants with concurrent Titles II and XVI claims, as a result of the Secretary's policy, is not realistic. An attorney has an ethical obligation to represent his client fully and effectively. *Motley*, 800 F.2d at 1255. Also, in section 406(a) cases, an attorney and his client may arrange, or the Secretary may fix, a fee larger than 25% of a claimant's retroactive benefits. Only direct payment is limited. Money owed an attorney beyond the 25% of benefits directly paid is not forgiven by the Secretary's application of section 1320a–6.

Admittedly, the Secretary's approach creates an anomaly: "[A] lawyer who represents a client who … is entitled to SSI benefits as well as Title II benefits, [w]ould receive less compensation, for the same amount of work, than he or she would receive were the client entitled only to Title II benefits." *Sepulveda v. Secretary of HHS*, 647 F.Supp. 197, 199 (E.D.N.Y.1985) (footnote omitted). We are not persuaded, however, that this scenario differs greatly from garden-variety social security cases, in which attorneys await the outcome of each case they undertake to determine their actual fee. Any capriciousness connoted by *Sepulveda* is not sufficiently weighty to abrogate the Secretary's discretion in interpreting and applying the statutes.

Another compelling interest the Secretary must address when allocating the moneys of a retroactive joint benefits award is reimbursement of the state. The Secretary's approach to attorney's fees, as many of our sister circuits have noted, provides a desirable protection of the SSI fund from which the state may recoup interim SSI it, in effect, has lent the claimant while his benefits application was pending, *see, e.g., Guadamuz v. Bowen*, 859 F.2d at 770 (9th Cir.1988); *Baker v. Bowen*, 839 F.2d 1197, 1200 (6th Cir.1988); *Wheeler*, 787 F.2d at 106–07 (3d Cir.1984). Because

---

**3.** In § 406(a) situations, the Secretary's application of § 1320a–6 does not affect the amount authorized as attorney's fees, only the amount withheld and paid directly.

Title II does not authorize withholding money to reimburse the state, preserving Title XVI funds to the full extent of the state's lien is a laudable, if not mandatory, goal.

Congressional intent to provide incentive for state interim welfare assistance is clear from the Act itself. Section 1383(g) of the Act explicitly allows the Secretary to withhold from a retroactive Title XVI award money that a state is owed for any interim aid it expended, 42 U.S.C. § 1383(g).[4] This "[C]ourt, as well as the agency, must give effect to [an] unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (footnote omitted). Despite section 1383(g)'s use of the permissive "may" in its language authorizing the Secretary to withhold funds from a Title XVI award to fulfill a state's lien, the Secretary clearly has a legitimate public interest to protect. Indeed, if the Secretary would withhold attorney's fees on a pre-offset basis, often the state would not be reimbursed fully because of an insufficient SSI fund. Such a possibility might well dissuade states from providing interim SSI.

We note that any arbitrariness suggested by the Secretary's protection of state welfare interests at the expense of ensuring payment for attorneys does not require us to vitiate the Secretary's regulations. Because the claims upon Title II benefits surpass the money available, a choice between competing interests is inevitable. Considering, however, that legal representation is encouraged by section 406's guaranteed fee, we find the Secretary's protection of the state interest, sometimes at the expense of attorney's fees, appropriate.

The juggling act the Secretary is asked to perform is unenviable; Congress has provided him with incomplete instructions and conflicting statutory policies. Confronted by several competing objectives, the Secretary has deemphasized a large Title II fund from which to cull attorney's fees. We must uphold his choice. In *White v. Bowen* we upheld the Secretary's practice of ensuring a large Title XVI fund by offsetting Title II benefits with Title XVI benefits after a separate computation of each. To require the Secretary to calculate attorney's fees prior to the section 1320a–6 offset would, in reality, be to ask the Secretary to raid Title XVI funds for attorney's fees. This he cannot do. *Galbreath*, 108 S.Ct. 892.

Arguably, there are other methods the Secretary could adopt. For example, the Secretary need not offset Title II funds by Title XVI funds when interim SSI has not been extended to the claimant. *Wheeler*, 787 F.2d at 107. "Perhaps a different or even more rational 'mix' of benefits, reimbursements, and attorneys' fees could have been reached." *Guadamuz*, 859 F.2d at 771. The alternatives, however, are not matters of judicial concern.

It is sufficient for us to declare that the Secretary's method of calculating benefits and attorney's fees comports with congressional intent and serves the various interests involved. Accordingly, we conclude that the determinations challenged by these plaintiffs were well within the discretionary authority of the Secretary and therefore must be sustained.

## CONCLUSION

The judgment of the district court is reversed and case is remanded for entry of judgment in favor of defendant-appellant.

---

**4.** Section 1383(g) reads, in part: "[T]he Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State ... from the benefits withheld an amount sufficient to reimburse the State ... for interim assistance furnished on behalf of the individual by the State." 42 U.S.C. § 1383(g)(1) (1982).