**Sam MAZZA, Appellant,**

v.

**SECRETARY OF DEPARTMENT OF HEALTH AND HUMAN SERVICES of the United States, Appellee.**

**No. 89–5601.**

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1989.

Decided May 17, 1990.

Rehearing and Rehearing In Banc Denied July 25, 1990.

**954**

Terence Farrell, (argued), Community Health Law Project, East Orange, N.J., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Susan J. Steele, (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Before HUTCHINSON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The claimant here filed concurrent claims for Social Security Disability and Supplemental Security Income payments. Asserting that a statutory amendment granted an option, the Social Security Administration calculated the disability benefits first and offset them against potential SSI payments, despite a long-standing practice to the contrary. As a result, the claimant was denied entitlement to SSI benefits and the accompanying entitlement to Medicaid. We conclude that the agency's unguided, random processing of the concurrent claims here was arbitrary and not in accordance with statutory intent. Accordingly, we will reverse the district court judgment against the claimant and remand with directions that he be found eligible for SSI, thereby protecting his eligibility for Medicaid.

Claimant Sam Mazza began a period of hospitalization for a disabling condition on June 8, 1984. He applied for Supplemental Security Income benefits under Title XVI (SSI) as well as for payments under the Old–Age, Survivors, and Disability Insurance program found in Title II. On June 19, 1984 the Social Security Administration advised him that the cash surrender value of his life insurance policy made him financially ineligible for SSI benefits. Mazza then took out a loan of $1,500 on the policy, which he used to pay part of a long overdue debt. This action reduced the cash value of the policy to $1,050 and diminished his assets so that he met the standards for inclusion in the SSI program.

At the Social Security Administration's suggestion, Mazza also applied for a veterans pension, which he received in February 1985. At that point, his income exceeded the limits set for SSI eligibility. Mazza's claim, therefore, is for the time between June 1984 and February 1985. During that period his sole income was a union pension of $269.91 per month. His hospitalization lasted until September 5, 1984, and it is not disputed that his disability has continued to the present.

Approximately a year after his application for benefits, Mazza received a letter from the Social Security Administration dated June 5, 1985 stating that he had met the medical requirements for Title II disability benefits and that a decision on the non-medical requirements would be forthcoming. In a July 15, 1985 letter, the Social Security Administration informed Mazza that his SSI claim was denied because of his income, which was said to include Title II benefits for the period beginning June 1984. In fact, the Title II

payments had not been made, nor was Mazza notified until some three weeks later that he had been found eligible for those benefits retroactively.[1]

On August 6, 1985, the Social Security Administration notified Mazza that he would receive a check for Title II benefits covering the months from June 1984 to July 1985. The letter included the following statement: "In an earlier notice we told you that we would reduce your social security benefits [Title II] for 06/84 THROUGH 05/85 if you had received supplemental security income payments for this period. Because you did not receive supplemental security income payments, your social security benefits will not be reduced."

In response to his request for reconsideration of the SSI denial, Mazza received a letter dated September 20, 1985 explaining that because he had received retroactive Title II payments covering the period after June 1984, he was not entitled to SSI benefits for the same time.

Mazza appealed this ruling and at a hearing before an ALJ pointed out that the refusal to allocate SSI benefits also resulted in a denial of Medicaid coverage for medical expenses incurred during his illness. The ALJ rejected Mazza's position on the ground that the retroactive Title II payments raised his income above the SSI eligibility ceiling for the months in question.

Because of a transcription difficulty, Mazza was required to present his case to a second ALJ who also rejected the claim. In the course of his recommended decision, the second ALJ nevertheless wrote: "In the instant case, the supplemental security income benefits should have been calculated first and the SSDI [Title II] benefits should have been reduced to account for those payments. This was admittedly not done."

After the Appeals Council accepted the second ALJ's recommendation to deny benefits, Mazza appealed to the district court. The district judge observed that "[b]ecause

of the timing of the Secretary's disability determination, Mazza's eligibility for SSI and SSDI [Title II] benefits for an earlier period was essentially determined concurrently." The court read the amended "windfall" statute, 42 U.S.C. § 1320a–6, to mean that "either SSI or SSDI [Title II] benefits awarded retroactively may be offset against the other to prevent a windfall payment to the applicant."

Focusing on the calculation of benefits chronology, the district court concluded that "[t]o the extent it is argued the Act is silent regarding whether SSI or SSDI [Title II] be calculated first, courts should defer to the Secretary's construction if it is reasonable, even if that construction is not the only one reasonable." Based on that rationale, the court granted summary judgment to the Secretary.

■ On appeal Mazza concedes that he is not entitled to duplicative payments for the June 1984 to February 1985 period, and disclaims any attempt to evade the windfall statute or to collect any additional sums. Instead, he seeks reallocation of the amounts already received so as to establish eligibility for SSI in addition to Title II. He contends that the Secretary should have first calculated the SSI benefits and then deducted them from the amount due from the Title II payments. Had that procedure been followed, Mazza would have received the Medicaid assistance that has been denied him.

The Secretary maintains that the windfall statute gives an option to calculate and reduce retroactive benefits in either order. The Secretary insists that this policy reflects a reasonable interpretation of the windfall statute, and that we should defer to that construction.

Although the windfall provision presents the crucial issue in this case, a brief preliminary review of the related benefits statutes will be helpful.

Title II of the Social Security Act, 42 U.S.C. §§ 401–433, provides that individu-

---

1. The notice also stated that Mazza was ineligible because he had been a patient in a public hospital and had received Medicaid. In fact, both of these assertions were incorrect.

als who have worked and contributed to the Social Security Trust Fund are entitled to disability benefits upon showing physical or a mental disability. This disability coverage is available without demonstrating financial need.

Title XVI of the Act, 42 U.S.C. §§ 1381–1383c, addresses SSI benefits. Eligibility for this program depends on claimants' incomes and financial assets rather than contributions to the Social Security Funds. Claimants may receive SSI payments for certain specified physical disabilities or when their incomes fall below a certain level. Disability payments received under Title II count as unearned income in evaluating claimants' financial need for SSI benefits.

The windfall statute, 42 U.S.C. § 1320a–6, governs retroactive awards of Title II and SSI benefits and is designed to prevent duplication of payments under both programs. In describing the need to prevent windfalls, the Conference Committee explained, "an individual eligible under both [the Title II] and SSI programs, whose determination of eligibility for [Title II] is delayed, can in some cases receive full payment under both programs for the same months." H.R. Conf.Rep. No. 944, 96th Cong., 2d Sess. 69, *reprinted in* 1980 U.S. Code Cong. & Admin. News 1392, 1416. The Senate also was aware of the problem and proposed that "an individual's entitlement under the two titles shall be considered as a totality." S.Rep. No. 408, 96th Cong., 2d Sess. 78 *reprinted in* 1980 U.S. Code Cong. & Admin. News 1277, 1356.

The Congressional discussion led to the 1980 legislation providing that "[Title II] benefits ... retroactively payable ... shall be reduced by an amount equal to ... supplemental security income benefits ... for such ... months as would not have been paid ... if the individual had received the [Title II] benefits ... at the times they were regularly due during such period rather than retroactively." Pub.L. No. 96–265, § 501(a), 94 Stat. 441, 469–70 (1980) (codified as amended at 42 U.S.C. § 1320a–6).

A program complementary to SSI is interim state assistance given without delay to the critically needy. Claimants will often file concurrently for benefits under both Title II and SSI. Because of the protracted nature of the administrative process, the waiting periods for determination of eligibility may be lengthy. In order to provide financial aid during the interim, states grant immediate assistance through their welfare agencies. In addition to preventing double payments, Congress intended the 1980 windfall statute to facilitate reimbursement to those states. *See* H.R. Conf.Rep. No. 944, 96th Cong., 2d Sess. 69, *reprinted in* 1980 U.S.Code Cong. & Admin. News 1392, 1416 ("From the amount of social security benefits offset under the provision, States would be reimbursed for any amounts of State supplementary payments that would not have been paid"). *See* 42 U.S.C. § 1383(g). *See also Moore v. Colautti*, 483 F.Supp. 357 (E.D.Pa.1979), (discussing legislative history of § 1383(g)), *aff'd*, 633 F.2d 210 (3d Cir.1980).

Although from a mathematical standpoint it would appear immaterial whether the amount of the Title II payments is offset by SSI, or whether SSI is offset by Title II benefits, the collateral effects can be quite significant to the institutions and the individuals involved.

> Attorney fees may be withheld from retroactive disability payments, but not from retroactive SSI benefits. 42 U.S.C. § 406. *See Bowen v. Galbreath*, 485 U.S. 74, 75, 108 S.Ct. 892, 893, 99 L.Ed.2d 68 (1988).

> Public assistance paid to a claimant by a state may be deducted from retroactive SSI payments by the Secretary and paid directly to the state. 42 U.S.C. §§ 407, 1383(g). *See Pappas v. Bowen*, 863 F.2d 227, 229 (2d Cir.1988). No such provision is applicable to retroactive disability payments.

> Medicaid eligibility is sometimes tied to SSI eligibility, but not to Title II entitlement. 42 U.S.C. §§ 1396a(a)(10), 1396b(a)(1); N.J.Stat.Ann. 30:4D–3(i).

Following enactment of the 1980 windfall statute, the Secretary published a regula-

tion setting out a procedure for calculating SSI benefits first. The regulation stated that where retroactive Title II benefits were payable for a period for which SSI payments had been received,

"Rather than reducing your SSI payments in quarters prior to your receipt of a retroactive monthly [Title II] benefit, we will reduce the retroactive [Title II] benefits by an amount equal to the amount of SSI payments ... that we would not have paid to you if your [Title II] benefits had been paid when regularly due rather than retroactively...." 20 C.F.R. § 416.1123(d) (1982). *See also* 20 C.F.R. § 404.408b(b) (1982 & 1989).

In a series of cases in the Courts of Appeals construing the 1980 legislation, the Secretary consistently and successfully advocated a policy of offsetting Title II benefits by SSI payments when the claims were processed concurrently. That procedure caused a reduction in the amount of attorney fees that the Secretary could pay directly to a claimant's lawyer.[2] The Courts of Appeals upheld the Secretary's policy even though it reduced the financial incentive for attorneys to represent claimants in those instances. *See Burnett v. Heckler*, 756 F.2d 621 (8th Cir.1985); *Cuthbert v. Secretary, Dep't. of Health & Human Serv.*, 784 F.2d 1157 (4th Cir.1985); *Detson v. Schweiker*, 788 F.2d 372 (6th Cir.1986); *Motley v. Heckler*, 800 F.2d 1253 (4th Cir. 1986); *Pappas v. Bowen*, 863 F.2d 227 (2d Cir.1988).

This Court also accepted the Secretary's position in *Wheeler v. Heckler*, 787 F.2d 101 (3d Cir.1986). There we ruled that the Secretary's interpretation of the windfall statute promoted the Congressional pur-

pose of avoiding double payment, and was consistent with the intent to reimburse the states for interim welfare benefits. *Id.* at 106. We made this point even though it was unclear on the record whether the claimant had received state assistance.

The 1980 legislation, however, was only partially effective, and failed to prevent windfalls when claimants had received Title II benefits and then later became eligible for SSI payments. Because the 1980 statute gave the Secretary the authority only to reduce Title II benefits by the amount of SSI payments, no basis existed to reduce retroactive SSI benefits by those already received through Title II.

To close the loophole, Congress enacted an amendment to the windfall statute, including it in the Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2615(a), 98 Stat. 494, 1132–33 (codified at 42 U.S.C. § 1320a–6). The amendment provided, in pertinent part, that where a claimant is entitled to benefits under Title II that were not paid during the months when due, and was also eligible for SSI benefits during those same months

"any benefits under title II that were regularly due in such month or months, or supplemental security income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual ... if he had received such benefits under title II of this chapter in the month or months in which they were regularly due."[3]

---

2. 42 U.S.C. § 406 limits direct payment of attorney fees by the Secretary to 25% of past-due Title II benefits. *See* Wheeler v. Heckler, 787 F.2d 101, 107 (3d Cir.1986).

3. This admittedly complex situation may perhaps be most easily explained through illustration.

Illustration No. 1. The claimant receives $200 in Title II benefits over a period of years. Then her economic condition worsens so that she becomes eligible for $300 per month SSI benefits. Before her SSI claim is determined, she receives $50 per month from the state as

public assistance benefits. Eventually, the Social Security Administration determines that she is entitled to receive SSI benefits and awards three months payments retroactively.

Under the original windfall statute, which contained a loophole because Title II benefits could not be offset against SSI, the claimant would have received $600 in Title II benefits during that same three-month period. The state would be reimbursed $150 for advances on the SSI benefits, and the claimant would receive $750 in SSI ($900 less the state reimbursement of $150), for a total recovery of $1,500.

This language poses some problems of grammatical as well as legal construction. Perhaps in part because of this awkward and ambiguous wording, opinions in the Courts of Appeals construing the 1984 amendment reveal no change in the Secretary's policy of computing SSI first in concurrent claims. In *White v. Bowen*, 835 F.2d 974, 978 (2d Cir.1987), the Court commented that the amended windfall statute provided "the Secretary with the option of reducing retroactive SSI benefits in lieu of retroactive OASDI [Title II] benefits. However, the amended section 1320a–6 in no way precludes the Secretary from continuing its policy of calculating retroactive SSI benefits prior to retroactive OASDI [Title II] benefits." The Court also remarked that there "simply is no clear statutory guidance on how to decide which retroactive benefits are to be calculated first." *Id.*

In *Baker v. Bowen*, 839 F.2d 1197 (6th Cir.1988), another attorney fee case, the Court rejected a contention that the 1984 amendment required the Secretary to change pre-existing policy. Similarly, in *McKenzie v. Bowen*, 787 F.2d 1216 (8th Cir.1986), the Court conceded that the amended statute was silent as to whether Title II benefits must be calculated first, but ruled that the Secretary's practice of offsetting them by the amount of SSI was consistent with legislative intent. "The windfall which concerned Congress relates both to offsetting retroactive [Title II] and SSI benefits and to offsetting these federal disability benefits and local welfare assistance." *Id.* at 1221.

One Court of Appeals noted the unpredictability of the Social Security Administration's claim processing. In *Guadamuz v. Bowen*, 859 F.2d 762, 765 (9th Cir.1988), the Court commented that "[a]t the present time, it is a matter of chance whether Title II or Title XVI [SSI] benefits are figured

first." Nevertheless, the Court found no objection to the Secretary's practice of calculating the SSI benefits first and setting them off against Title II benefits, citing *White* and *Baker.*

Despite this relatively long-standing practice and consistent advocacy for that position before the Courts, in this case the Secretary asserts that when processing concurrent applications he may freely apply the setoffs in a haphazard fashion. After years of litigation to vindicate the policy of computing SSI payments first, and opposing all efforts to calculate Title II benefits first, the agency here seeks to defend that which it has so long attacked.

The revised practice lacks consistency, reaching the correct result in some circumstances, but not in others. The Secretary's change of position goes beyond the intentions of Congress in modifying the windfall statute. The amendment was not designed to change the consistent policy of offsetting Title II by SSI benefits in concurrent claims by substituting a random result dependent on which clerk was more efficient in processing claims for the respective benefits. Congress designed the amendment to close a loophole, not to alter a procedure that was working well. The legislation was to complement, not compromise, the existing practice in concurrent claims.

The weight given to "an administrative interpretation will depend, among other things, upon 'its consistency with earlier and later pronouncements' of an agency." *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). But we note that agencies must be able to "adapt their rules and policies to the demands of changing circumstances." *Permian Basin Area Rate Cases*, 390 U.S. 747, 784, 88 S.Ct. 1344, 1369, 20 L.Ed.2d 312 (1968).

Illustration No. 2. Assume the same facts as above. Under the 1984 amendment, an offset of the Title II benefits received would be applied so that only $100 per month of SSI benefits would be due, and $50 of that would be used to reimburse the state. In that instance, the claimant's total recovery of SSI, Title II, and state interim benefits would be $900 ($600 Title II, $150 SSI, $150 state interim benefits). *See* the discussion in *Gallo v. Heckler*, 600 F.Supp. 1513, 1515–18 (E.D.N.Y.1985). *See also Burnett v. Heckler*, 756 F.2d 621, 628 n. 4 (8th Cir.1985); *Lindsay v. Secretary*, 612 F.Supp. 366, 367 (D.N. J.1985).

Nevertheless, "an agency changing its course must apply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). *See also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change"). The Secretary has not offered a reasoned justification here for the change in policy.

■ Courts do not accept a revision in administrative interpretation when it "flatly contradicts the position which the agency had enunciated at an earlier date, closer to the enactment of the governing statute." *General Elect. Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976). *See also Forbes Health Sys. v. Harris,* 661 F.2d 282, 286 (3d Cir.1981).

■ We recognize that, generally, Courts defer to an agency in "housekeeping" measures designed to facilitate processing of numerous claims.[4] The Secretary's handling of millions of claims may result inevitably in inequities in individual circumstances. That unfortunately is the byproduct of numerosity and governmental complexity. But adherence to the pre-existing policy would have avoided the unfortunate result here, and the Secretary has not articulated any reason for changing that earlier practice.

The Secretary concedes that regulations embodying his revised position have not been adopted, but relies on the Program Operation Manual System (POMS), which states: "the rules for determining which benefit to offset are designed to ensure orderly processing. They do not mandate that offset apply to one benefit or the other. . . . Determining whether title II or title XVI [SSI] offset applies depends on which benefit is paid first." Program Operation Manual System of the Social Security Administration § 02610.015. According to the manual, that process applies even in the instance where the state had provided welfare assistance to the claimant: "Retroactive SSI benefits are paid to the State, instead of the beneficiary, if there is an interim assistance reimbursement (IAR) agreement. However Title XVI offset, if appropriate, is applied before any amount is sent to the State." *Id.* § 02610.070.[5]

The procedure condoned by the manual would allow only partial, or even no, reimbursement to the state in concurrent applications whereas following the original practice would result in full repayment. Nothing in the 1984 amendment justifies such a change.[6]

---

4. This Court has previously validated regulations governing computation of benefits in another context. In *Lugo v. Schweiker,* 776 F.2d 1143 (3d Cir.1985), regulations provided that the Social Security Administration would net all errors (overpayments and underpayments) to the claimant. We deferred to the Secretary's practice, finding it neither arbitrary nor capricious. *See also Sullivan v. Everhart,* — U.S. —, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990) (upholding Secretary's netting regulations).

*Lugo* is distinguishable because the Secretary adopted regulations and acted uniformly when treating overpayments and underpayments. Moreover, no other Congressional interest was apparent in *Lugo:* neither eligibility for medicaid nor encouraging interim welfare assistance depended on the Secretary's netting procedure.

5. Although the agency asserts the revised practice as a defense to Mazza's claim, the record raises the question of whether the action in this case was based on a truly national policy rather than a *post hoc* rationalization.

6. Some examples may be helpful:

Illustration 1. Assume that a claimant receives $200 in monthly state assistance for a period of three months for a total of $600. During that same time, she is eligible for SSI benefits of $300 per month, for a total of $900. It is ultimately determined that she is entitled to Title II benefits of $600 per month, or a total of $1,800, which are paid retroactively. Under the Secretary's prior policy for concurrent claims, the following scenario would result:

SSI benefits would be calculated first. Of the total SSI benefits of $900, $600 would be used to reimburse the state for its "advances." The claimant would receive the remaining $300 as SSI benefits. She would also receive Title II benefits of $900 ($1,800 due less $900 total SSI offset). This result is in accord with the windfall statute, both before and after the 1984 amendments.

Although the state's interest is not at issue here, the fact that it would be adversely affected by the Secretary's random procedure illustrates the vice in a statutory reading that would frustrate Congress' desire for reimbursement of interim assistance. Mazza, of course, relies not on prejudice to the state, but on a personal financial detriment caused by ineligibility for Medicaid as a derivative consequence of the denial of SSI.

The Social Security Administration was aware that Mazza had pending a colorable claim for SSI and Title II payments as of July 1985. Nevertheless, the clerk processing the SSI claim denied it on the basis that Title II benefits—which Mazza had not yet received—raised his income level above that which would have qualified him for SSI. This administrative boot-strapping saddled Mazza with a crushing debt for medical expenses. The result is hardly consistent with our previously articulated view that "[t]he overall objective of the social security system is 'the protection of its beneficiaries from some of the hardships of existence.'" *Finberg v. Sullivan,* 634 F.2d 50, 63 (3d Cir.1980) (in banc) (quoting *United States v. Silk,* 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947)).

It is significant that during the same session in which the 1984 amendment to the windfall statute was enacted, Congress also passed the Social Security Disability Benefits Reform Act of 1984. The Committee Report discussing the Act stated that its "overall purpose" was "first, to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government." H.R.Rep. No. 618, 98th Cong., 2d Sess. 2, *reprinted in* 1984 U.S.Code Cong. & Admin. News. 3038, 3039.

The decision in Mazza's case, dependent as it was on a clerical determination to pay Title II benefits first and thus foreclose entitlement to SSI, qualifies as one of those arbitrary determinations that Congress sought to avoid. Moreover, entrusting unguided discretion to lower level positions in an administrative agency is the type of *ad hoc* decision-making criticized by the Supreme Court in *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974), as being of an "inherently arbitrary nature." *See also* 2 K. Davis, *Administrative Law Treatise* § 7:27 (2d ed. 1979) ("Whenever discretion is either unnecessary or excessive, that is, whenever law can produce better results than the present discretion, decisions that are now *ad hoc* should not be").

We are persuaded that the Secretary's action in denying SSI eligibility to the claimant in this case cannot be sustained. Accordingly, the judgment of the district court will be reversed, and the district court will remand the case to the Social Security Administration for the entry of a decision that Mazza was entitled to SSI benefits. But because the claimant has disclaimed any intent to receive any more money from Social Security Administration, no further payment to him need be made.

Illustration 2. Assume again that concurrent applications for Title II and SSI are made, and that benefits are awarded retroactively under the same fact situation set out in illustration 1. Through the industry of the clerk who calculates Title II benefits, they are paid some weeks earlier than the SSI benefits that are delayed by an overburdened clerk who was assigned that claim. The following would result for the same three-month period: $1,800 in Title II benefits would be paid. Because this exceeds the amount of SSI benefits of $900, no SSI benefits would be allocated and the state would receive nothing. In this example, the claimant has received a "windfall" of $600 in state advances, and the state has not been reimbursed despite the provisions of 42 U.S.C. § 1383(g).